489 S.E.2d 625

**B. Boykin ROSE, Director, South Carolina Department of Public Safety, Appellant/Respondent,**

v.

**David M. BEASLEY, as Governor of the State of South Carolina, Respondent/Appellant.**

**No. 24667.**

Supreme Court of South Carolina.

Heard May 6, 1997.

Decided Aug. 11, 1997.

Rehearing Denied Sept. 5, 1997.

A. Camden Lewis, of Lewis, Babcock & Hawkins, L.L.P., Columbia, for appellant/respondent.

David C. Eckstrom, of Nexsen, Pruet, Jacobs & Pollard, L.L.P.; and Vance J. Bettis, of Gignilliat, Savitz & Bettis, Columbia, for respondent/appellant.

## PER CURIAM:

This appeal is from an order of the circuit court holding void the suspension of B. Boykin Rose from his office as Director of the Department of Public Safety (DPS) and affirming his removal from that office. We affirm.

### FACTS

The facts leading to Rose's suspension and removal involve the administration of federal grant programs by DPS. The DPS Office of Safety and Grants receives grant applications which are initially reviewed by the DPS staff and approved by the Director of DPS. The Director then forwards these recommendations to a contact person at the Governor's Office. The contact person gives approval for DPS to forward its recommendations to the Public Safety Coordinating Council which approves or disapproves funding.

Sometime in the spring of 1996, Rose began to suspect that grant recommendations had been illegally altered and that his Chief-of-Staff, Otis Rawl, was forging his (Rose's) signature on grant recommendations in complicity with members of the Governor's staff. Rose reported his suspicions to the United States Department of Justice, the South Carolina Attorney General, and the Governor's Chief Counsel, Henry Deneen. Rose also fired Otis Rawl who had originally been hired at the Governor's request.

On June 17, Rose met with the Governor along with former United States Attorney Bart Daniel and Chief Counsel Deneen. The Governor told Rose he had hired Daniel to investigate the alleged wrongdoing by the Governor's staff. Daniel and Deneen requested documents from Rose regarding the grant process and the allegedly altered grant recommendations which Rose agreed to supply. After this meeting, Rose privately asked Daniel for a letter of representation to clarify Daniel's role which Daniel agreed to provide. On June 18, Rose again met with Daniel and Deneen and they again asked for the documents which Rose said he had not had time to gather. Rose promised he would forward the documents later that day but failed to do so.

On June 22, Rose read in the newspaper that Daniel had been hired to investigate the DPS staff and not the Governor's

staff. Rose called Daniel and Daniel reassured Rose that he was in fact investigating the Governor's staff and not DPS. On June 24, Rose again met with Deneen and Daniel and was again asked but did not provide the requested documents.

On June 26, Rose received a letter from Daniel requesting the documents. Rose responded by letter dated June 28 questioning Daniel's role in the investigation and stating that he would not provide the requested documents until Daniel provided him with a representation letter.

In response to Rose's refusal to comply with the request for documents, the Governor suspended him from office on July 1. Rose subsequently received a Notice of Intent to Remove from Office to which he was permitted a written response. On September 3, the Governor ordered Rose removed from office pursuant to S.C.Code Ann. § 1–3–240 (Supp.1996).[1] Rose appealed to the circuit court as provided under S.C.Code Ann. § 1–3–250 (Supp.1996). The circuit court ruled Rose's suspension was void for lack of authority but affirmed his removal from office. Both Rose and the Governor appeal.

## OUR STANDARD OF REVIEW

Under S.C.Code Ann. § 1–3–250 (Supp.1996), an appeal of the circuit court's judgment in an action contesting an officer's removal is allowed "as in any other appeal at law." In an action at law, our jurisdiction is limited to the correction of errors of law and factual findings will not be disturbed unless unsupported by any evidence. *Townes Associates, Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E.2d 773 (1976). This standard governs our review in this case.

## ROSE'S APPEAL OF HIS REMOVAL

### 1. Proof of misconduct

Under S.C.Code Ann. § 1–3–10 (1986), a public officer has an affirmative duty to "immediately furnish to the Governor,

---

1. In contrast to other appointed officers who may be removed at the Governor's discretion, the Director of DPS may be removed only for malfeasance, misfeasance, incompetency, absenteeism, conflicts of interest, misconduct, persistent neglect of duty in office, or incapacity. *Compare* S.C.Code Ann. § 1–3–240(B) *and* (C)(8) (Supp.1996).

in such form as he may require, any information desired by him in relation to [the officer's] affairs or activities." [2] The circuit court affirmed Rose's removal on the ground he violated this statute and was therefore guilty of misconduct.

■ Rose contends this Court should hold as a matter of law that he committed no misconduct because his failure to produce the requested documents was prompted by his uncertainty about the scope of Daniel's representation. Rose relies on his letter of June 28 by which he responded to Daniel's request as follows:

> .... I must state that the manner in which your questions are phrased and the nature of the information you seek raises some question about your role in this matter. In our recent contacts, you represented to me that you were not hired by the Governor's Office to investigate the Department of Public Safety, but had been hired to advise the Governor on legal (not political) matters.... However, the Governor's spokesperson has been quoted describing your role to the contrary without stating under what authority you are operating as an independent counsel.

> To ensure that our actions do not jeopardize any aspect of the ongoing investigations, I would greatly appreciate it if you would provide me in writing with the authority under which you are operating when making these requests. I would also request that you provide me in writing with the parameters of your agreement for representation of the Governor and whether this representation extends to members of his staff or the Governor's Office as an entity....

> Again, at this time I must refrain from answering your request since I cannot in good conscience respond without a complete understanding of your representational relationship and operating authority in this matter.

---

**2.** Similarly, article IV, § 17, of our State constitution provides:

All State officers, agencies, and institutions within the Executive Branch shall, when required by the Governor, give him information in writing upon any subject relating to the duties and functions of their respective offices, agencies, and institutions, including itemized accounts of receipts and disbursements.

As indicated in this letter, Rose knew Daniel was representing the Governor.[3] Regardless of whether Daniel was investigating the Governor's Office or DPS, Rose was obligated to furnish the requested documents.[4] The scope of Daniel's representation of the Governor is immaterial to Rose's duty to the Governor under § 1-3-10.

■ Rose also contends his letter of June 28 indicates only that he intended to *delay* providing the documents and is not proof he *refused* the Governor's request. Section 1-3-10 imposes a duty to "immediately" furnish information requested by the Governor. This statute allows a public officer no discretion to delay compliance with the Governor's request. It is not for this Court to second-guess the wisdom of the legislature in imposing such a duty on public officers. A public officer's failure to comply with a statutory duty constitutes misfeasance in office. *Richland County v. Owens,* 92 S.C. 329, 75 S.E. 549 (1912). Misfeasance is a ground for removal under § 1-3-240(C). Accordingly, Rose's failure to immediately furnish the requested documents supports his removal.

Rose's argument to this Court that he had "an understanding with the FBI to protect important investigative documents" is contradicted by his own testimony on appeal to the circuit court. Rose testified that FBI agent Dodge Frederick had told him that *pending requests under the Freedom of Information Act* did not have to be honored because of the exemption for documents collected in pursuit of an investigation. Rose admitted this conversation did not concern Daniel's request for documents and he had no impression he was under any duty imposed by the FBI regarding the documents Daniel was requesting. Further, Rose failed to provide even the publicly available grant procedure documents requested by Daniel which were not "investigative documents."

■ Finally, Rose suggests it is within this Court's power to effectively prevent the Governor's suppression of the allega-

---

3. Further, in his response to the Governor's Notice of Intent to Remove, Rose admitted the Governor had personally told him on June 17 that he had hired Daniel to conduct an independent investigation.

4. Rose also admitted that Henry Deneen, whom Rose knew to be the Governor's chief counsel, had asked for the documents as well.

tions of grant fraud by his staff by holding Rose was guilty of no misconduct as a matter of law. Despite the reprehensibility of the alleged grant manipulations and forgeries, it is unavoidably *Rose's* conduct we must scrutinize. We cannot exonerate him by examining the merits of his claim regarding improprieties by other government officials.

### 2. Procedural violations

Rose contends the hearing on appeal to the circuit court should have been a de novo hearing on the merits rather than a determination that his removal was supported by clear and convincing evidence. We disagree.

Section 1-3-250, which provides for appeal to the circuit court, states:

The judge shall hear and determine the appeal both as to law and fact upon the record as made before the Governor and upon such additional evidence as he shall see fit to allow.

Rose relies on dictum[5] in a concurrence in *State v. Ballentine,* 152 S.C. 365, 150 S.E. 46, 48 (1929), stating that under the predecessor statute to § 1-3-250, an officer "is allowed the right of appeal to a circuit judge, who hears the matter *on the merits de novo.*" (Emphasis added).

Rose's contention that he is entitled to a de novo proceeding under this statute is without merit. A de novo hearing on appeal of an order by an executive body acting in a quasi-judicial capacity[6] violates the separation of powers provision of our State constitution because judicial discretion cannot be substituted for that of an executive body. *Guerard v. Whitner,* 276 S.C. 521, 280 S.E.2d 539 (1981); *Bd. of Bank Control v. Thomason,* 236 S.C. 158, 113 S.E.2d 544 (1960). Accordingly, the circuit court properly applied § 1-3-250 and

---

**5.** The actual issue in *Ballentine* was whether judicial review of the Governor's order of removal was unconstitutional. The Court concluded the Governor acted in a quasi-judicial capacity in removing an officer and therefore his decision was properly subject to judicial review.

**6.** In removing an officer, the Governor as chief executive acts in a quasi-judicial capacity. *Ballentine, supra.*

limited its review to a determination that the facts supported the Governor's decision.

Rose also contends the lack of a de novo hearing before the circuit court improperly placed the burden of proof on him to prove by clear and convincing evidence that he should not be removed. To the contrary, the circuit court specifically held the grounds for removal asserted by the Governor were supported by clear and convincing evidence. There is nothing in the circuit court's order indicating Rose bore any burden of proof.

■ Rose contends his statutory rights were violated because he did not receive an oral pre-removal hearing. Under § 1–3–240(A), before removing any officer, the Governor must inform him in writing of the specific charges and give him an opportunity on reasonable notice "to be heard." The circuit court agreed Rose was entitled to an oral pre-removal hearing under this statute[7] but found the post-removal hearing on appeal to the circuit court was sufficient to cure any due process violation.[8] Rose contends this was error because the statutory violation could not be cured by a post-removal hearing. We disagree.

Rose has failed to show any prejudice from the lack of a pre-removal hearing. At the hearing before the circuit court, he was represented by counsel and had the opportunity to introduce evidence, cross-examine adverse witnesses, and argue his case to the court. This post-removal procedure, which satisfied due process, sufficiently compensated for the lack of an oral pre-removal hearing. *See Glenn v. Newman,* 614 F.2d 467 (5th Cir.1980); *see also Loudermill, supra* (a full post-removal hearing and judicial review satisfies due process even

---

7. There has been no appeal of the circuit court's ruling that the written pre-removal procedure violated § 1–3–240(A).

8. As a threshold issue on the due process claim, the circuit court found Rose had a property interest in his office as Director of DPS. The United States Supreme Court has held that a government employee who is statutorily entitled to continued employment absent good cause for dismissal has a property interest in that employment for purposes of a due process analysis. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

where only a written pre-removal procedure is allowed). Accordingly, we find no error.

Finally, Rose contends the circuit court applied an arbitrary and unreasonable standard of proof indicated by this statement in its order:

> On this record, Rose's failure to provide these documents and information ... *appeared* to be intentional and wrongful.

Rose contends an "appearance" standard is a shallow level of proof that requires reversal. The circuit court order, however, specifically states that the evidence supporting Rose's removal for misconduct was *clear and convincing.* It is clear from the order as a whole that the circuit court did not apply an "appearance" standard of proof in reviewing Rose's removal but the more stringent clear and convincing standard.[9]

In conclusion, the circuit court properly affirmed Rose's removal under § 1–3–240(C).

## GOVERNOR'S CROSS–APPEAL

■ The circuit court held Rose's pre-removal suspension was void because there is no constitutional or statutory provision allowing the Governor to suspend the Director of DPS. Despite this lack of statutory or constitutional authority,[10] the Governor, citing cases from other jurisdictions, argues he has the power of suspension as an incident of his statutory power of removal. This proposition clearly conflicts with well-established South Carolina precedent.

■ Under South Carolina law, the Governor can neither appoint to office nor suspend or remove from office unless the power to do so is conferred upon him by the Constitution or statute. *State ex rel. Huckabee v. Hough,* 103 S.C. 87, 87 S.E. 436 (1915). The Governor argues this requirement of an explicit grant of the power to suspend applies only to the suspension of constitutional officers. To the contrary, in

---

**9.** On appeal to this Court, the Governor does not challenge this standard of proof.

**10.** This case does not involve the Governor's power of suspension under S.C. const. art. VI, § 8, which allows suspension by the Governor in certain instances of indictment of a public officer.

*Dacus v. Johnston,* 180 S.C. 329, 185 S.E. 491 (1936), we applied this same analysis to find invalid the suspension of a state highway commissioner who was not a constitutional officer but an appointee similar to the Director of DPS.

The Governor further relies on *In re Ferguson,* 304 S.C. 216, 403 S.E.2d 628 (1991), in which this Court held it had the power to suspend a circuit court judge based on the inherent power to administer justice as provided under article V of our State constitution. The Governor argues the power of suspension flows from his inherent power as head of the executive branch of government. It is well-settled, however, that the power of removal or suspension from office is not an inherent function of the chief executive. *Huckabee v. Hough, supra; McDowell v. Burnett,* 92 S.C. 469, 75 S.E. 873 (1912); *State v. Rhame,* 92 S.C. 455, 75 S.E. 881 (1912).

In conclusion, the trial judge properly ruled that the Governor's suspension of Rose was void because the Governor has no statutory or constitutional authority to impose such a suspension.

**AFFIRMED.**