517 S.E.2d 3

**Lois EARGLE, in her capacity as Horry County Auditor, Respondent,**

**v.**

**HORRY COUNTY, a Body Politic and Subdivision of the State of South Carolina, and Linda Green Angus, in her capacity as Horry County Administrator, Appellants.**

No. 2880.

Court of Appeals of South Carolina.

Heard Dec. 9, 1998.
Decided April 26, 1999.
Rehearing Denied July 17, 1999.

426

John P. Henry and Emma Ruth Brittain, both of The Thompson Law Firm, of Conway, for appellants.

Thomas C. Brittain and Peter L. Hearn, both of Hearn, Brittain & Martin, of Conway, for respondent.

Sandra J. Senn, of Charleston; and Stephanie P. McDonald, of Mt. Pleasant, for Amicus Curiae South Carolina Sheriff's Association.

HOWELL, Chief Judge:

Horry County and the Horry County administrator appealed from the circuit court's determination that the administrator lacked authority to suspend three employees of the Horry County auditor. A divided panel of this Court reversed the circuit court's decision, concluding that the county administrator did have authority to suspend employees of an elected official. *See Eargle v. Horry County,* Op. No. 2880 (filed August 17, 1998) (Davis Adv. Sh. No. 29). Thereafter, this

Court granted a petition for rehearing *en banc* to review the panel decision. The prior opinion is hereby withdrawn, and the decision of the circuit court is affirmed in part, reversed in part, and remanded.

## I. BACKGROUND

### A. Statutory Framework

As part of the broad powers granted to counties by the Home Rule Act, S.C.Code Ann. §§ 4–9–10 through –1230 (1986 & Supp.1998), counties are explicitly authorized to "develop personnel system policies and procedures for county employees by which all county employees are regulated except those elected directly by the people." S.C.Code Ann. § 4–9–30(7) (Supp.1998).

Pursuant to this authority, Horry County adopted Ordinance 6–87, which established a personnel policy for Horry County employees. Among other things, the Horry County personnel policy prohibits "improper use of time clocks," "improper use of or abuse of sick leave," and "unexcused absence[s]." The Horry County personnel policy includes suspension as a possible punishment for certain violations.

S.C.Code Ann. § 4–9–30(7) vests most decisions regarding the hiring and firing of county employees with the county. However, "[t]his employment and discharge authority does not extend to any personnel employed in departments or agencies under the direction of an elected official or an official appointed by an authority outside county government." S.C.Ann. § 4–9–30(7).

Horry County operates under the council-administrator form of government. The administrator serves as "the chief administrative officer of the county government," S.C.Code Ann. § 4–9–630(1) (1986), and, among other duties, is charged with "the administration of county personnel policies." S.C.Code Ann. § 4–9–630(7) (1986). However, "[w]ith the exception of organizational policies established by the governing body, the county administrator shall exercise no authority over any elected officials of the county whose offices were created either by the Constitution or by the general law of the State." S.C.Code Ann. § 4–9–650 (1986).

B.  Factual and Procedural History

Respondent Lois Eargle (the Auditor) is the duly-elected auditor for Horry County.  *See* S.C.Code Ann. 4–9–60 (1986) ("Under the council, council-supervisor and council-administrator forms of government provided for in this chapter the county treasurer and the county auditor shall be elected.") On December 18, 1996, the Auditor and three of her staff planned to attend together the funeral of a co-worker's father. The staff members were all non-elected county employees hired by the Auditor.  Two mere hourly employees, while the third was the salaried Deputy Auditor.  En route to the funeral, the Auditor and the staff members were injured in an automobile accident.

The next day, one of the hourly staff members submitted an absentee report showing 1.5 hours absence for "vacation" on December 18.  She also reported that she failed to clock out for lunch on that day.  By absentee report dated December 20, 1996, the other hourly staff member claimed 2.75 hours "sick" leave on December 18, and two additional sick days for December 19 and 20, 1996.  She, too, reported that she failed to clock out for lunch on December 18.

When Linda Angus, the Horry County Administrator (the Administrator), learned that the employees failed to clock out before leaving to attend the funeral and then attempted to designate the missed time as vacation or sick leave, she requested that the Auditor discipline the employees.  Specifically, she requested the Auditor suspend the Deputy Auditor for "failing to supervise the situation in that she failed to require the employees to clock out," and suspend the other employees for "attending to personal business while on Horry County time."  The Administrator offered to stagger the suspensions so they would not interrupt the operation of the Auditor's office or to bring in temporary employees to replace them.

The Auditor refused to suspend the employees, insisting that they should receive a warning rather than a suspension. The Auditor contended that the first of the year was the busiest time in her office, and that she could not properly operate the office without her employees or with employees unfamiliar with the operation of her office.

After the Auditor's refusal, the Administrator suspended the employees. The Deputy Auditor was suspended for five days without pay, and the other employees were suspended for three days without pay.

The Auditor then brought this action seeking a judicial declaration that the Administrator lacked the authority to suspend employees of an elected official. The parties agreed to stay implementation of the suspensions pending the outcome of the action.

After a hearing, the circuit court ruled in favor of the Auditor. The court noted that the Auditor's employees are subject to Horry County's personnel policies and procedures and that the Administrator has the right to enforce the policies. The court also noted that the Auditor, "[a]s a supervisor of County employees, . . . has the responsibility to advise the employees of the County of the personnel policies and procedures as well as to enforce these policies." The court concluded, however, "[r]emoval of employees from the workplace by suspension interferes with an elected official's ability to perform the duties and responsibilities of his or her office." The circuit court therefore concluded that the Administrator's authority to administer and enforce personnel policies does not extend to the right to suspend the employees of an elected official.

## II. SCOPE OF ADMINISTRATOR'S AUTHORITY

■ On appeal, the Appellants argue that the circuit court erred by concluding that the Administrator does not have the statutory authority to suspend employees of an elected official. We disagree.

As noted above, S.C.Code Ann. § 4–9–30(7) expressly authorizes counties to develop personnel polices and expressly prohibits counties from hiring or firing the employees of an elected official. It does not, however, expressly authorize or prohibit the suspension of employees of an elected official. When determining whether an administrator has such authority, we must broadly construe the powers granted to the counties by the Home Rule Act. See S.C.Code Ann. § 4–9–25 (Supp.1998) ("The powers of a county must be liberally construed in favor of the county and the specific mention of

particular powers may not be construed as limiting in any manner the general powers of counties."); S.C. Const. art. VIII, § 17 ("The provisions of this Constitution and all laws concerning local government shall be liberally construed in their favor. Powers, duties, and responsibilities granted local government subdivisions by this Constitution and by law shall include those fairly implied and not prohibited by this Constitution."). Nonetheless, we simply cannot conclude, as the Administrator would have us do, that the failure to prohibit suspension amounts to an implicit grant of the power to suspend the employees of elected officials.

In a long line of cases, our Supreme Court has held that the Governor has no authority to appoint an official to office, or to suspend or remove an official from office, absent express statutory or Constitutional authority. Express authority to remove does not encompass the authority to suspend, nor does the express authority to suspend encompass the authority to remove. *See Rose v. Beasley*, 327 S.C. 197, 206–07, 489 S.E.2d 625, 629–30 (1997) (rejecting argument that Governor possessed right to suspend as an incident of Governor's statutory power to remove from office); *State ex rel. Huckabee v. Hough*, 103 S.C. 87, 93, 87 S.E. 436, 437 (1915) ("[T]he conferring of the power of suspension impliedly denies the power of removal."); *McDowell v. Burnett*, 92 S.C. 469, 483, 75 S.E. 873, 878 (1912) ("The General Assembly, in conferring on the Governor the power to suspend, denied him the power to remove magistrates, except as such power was conferred conditionally by other statutes. . . .").

While these cases are not controlling here, they do underscore the significance of the power to suspend. Notwithstanding the broad interpretation required by our Constitution and by section 4–9–25, our historical hesitation to give our chief executive the power to suspend elected officials absent express statutory or constitutional authority should make this Court extremely cautious when determining whether a particular grant of power includes the power to suspend.

As noted above, S.C.Code Ann. 44–9–650 (1986) provides that, "[w]ith the exception of organizational policies established by the governing body, the county administrator shall exercise no authority over any elected officials of the county

whose offices were created either by the Constitution or by the general law of the State." We believe the circuit court properly viewed this statute as imposing some limit on an administrator's authority to enforce its policies against employees of an elected official.[1]

As long as there are county-wide elective offices, there will be some tension between the elected officials and the county governing body. Certainly, a county governing body needs an appropriate level of control over county employees to ensure the smooth operation of county offices. However, to give the county governing body too much control over an elected official and his or her employees could force the elected official to place the interests and concerns of the governing body over those of the electorate. Moreover, a county governing body unhappy with the results of an election could use its power to render the duly-elected official largely ineffective. The various provisions of the Home Rule Act, particularly sections 4–9–30(7) and 4–9–650, reflect the General Assembly's striking of a careful balance between the county governing body's interest in the smooth operation of county offices and the electorate's interest in having its votes given effect.

In our view, granting a county administrator the power to suspend the employees of an elected official disturbs the balance struck by the General Assembly by giving the administrator too much control over the operation of the elected official's office. Suspensions of employees, even short-term suspensions, can have a devastating impact on the elected official's ability to carry out his or her constitutional or statutory duties. Thus, giving the administrator the authority to suspend could cripple the operation of the elected official's

---

1. The circuit court ruled both the Administrator and the Auditor have the right to enforce the county's personnel policies as to the Auditor's employees. Because these rulings are not challenged on appeal, they are the law of the case. *See, e.g., Resolution Trust Corp. v. Eagle Lake & Golf Condominiums*, 310 S.C. 473, 475, 427 S.E.2d 646, 648 (1993) ("Appellant has not appealed the judge's ruling that the affirmative defenses were not properly before him, but has appealed and argued the merits of those defenses. The trial judge's procedural ruling is the law of the case since it has not been appealed."); *Englert, Inc. v. Netherlands Ins. Co.*, 315 S.C. 300, 304, 433 S.E.2d 871, 874 (Ct.App. 1993) ("The appellant's failure to challenge this ruling makes it the law of this case (right or wrong).") We therefore express no opinion as to the soundness of these rulings.

office and prevent the elected official from carrying out his or her duties. We believe that interpreting sections 4–9–30(7) and 4–9–630(7) as authorizing the suspension of employees of elected officials would give an administrator an impermissible level of control, albeit indirect, over an elected official, thus violating S.C.Code Ann. § 4–9–650.

Accordingly, we conclude that, absent explicit statutory authority, a county administrator or other governing body simply lacks the power to suspend the employees of an elected official.[2] While article VIII, section 17 of the South Carolina Constitution and S.C.Code Ann. § 4–9–25 require this Court to liberally construe the county's authority, this rule of construction cannot be relied upon to sanction a degree of county intrusion into the affairs of an elected official that is prohibited by another statute. *Cf. Hatchett v. Nationwide Mutal Ins. Co.*, 244 S.C. 425, 432, 137 S.E.2d 608, 611 (1964) ("There is a marked distinction between liberal construction of statutes, by which courts, from the language used, the subject-matter, and the purposes of those framing them, find out their true meaning, and the act of a court in ingrafting upon a law something that has been omitted, which the court believes ought to have been embraced. The former is a legitimate and recognized rule of construction, while the latter is judicial legislation, forbidden by the constitutional provisions distributing the powers of government among three departments, the legislative, the executive, and the judicial.").

---

**2.** It could be argued, however, that short-term suspensions such as those at issue in this case pose no real threat to the operation of the elected official's office, and that such suspensions should be viewed as a proper exercise of the power granted to the county governing body. The potential for abuse could be limited by treating long-term or indefinite suspensions as tantamount to discharge and therefore prohibited by S.C.Code Ann. § 4–9–30(7). We do not believe such an interpretation of the relevant statutes is proper. First, there is no language in the statutes that would allow some, but not all, suspensions to stand. Moreover, such a rule would provide little before-the-fact guidance to county officials considering the suspension of an employee of an elected official, and would practically guarantee that every disputed suspension of an employee of an elected official will result in a court battle to determine whether the suspension is "tantamount to discharge." The needs of county government, its employees, and the public are ill-served by a ruling that creates as many questions as it answers.

We fully recognize that our ruling today could lead to difficulties in counties where there may be a conflict between the county governing body and an elected official. Nonetheless, in most cases, the threat of displeasing the electorate and losing a re-election bid should be a sufficient check on the behavior of the elected official. No similar check on the county administrator's behavior exists, given that the administrator is not elected but instead is appointed by the county council. *See* S.C.Code Ann. § 4–9–620 (1986).[3]

## III. ATTORNEY'S FEES

■ The Appellants also contend that the circuit court erred by awarding the Auditor attorney's fees under S.C.Code Ann. § 15–77–300 (Supp.1998). We agree.

■ S.C.Code Ann. § 15–77–300 provides, in relevant part:

In any civil action brought by the State, any political subdivision of the State or any party who is contesting state action, unless the prevailing party is the State or any political subdivision of the State, the court may allow the prevailing party to recover reasonable attorney's fees to be taxed as court costs against the appropriate agency if:

(1) The court finds that the agency acted without substantial justification in pressing its claim against the party; and

(2) The court finds that there are no special circumstances that would make the award of attorney's fees unjust.

Thus, section 15–77–300 establishes three prerequisites before an award of attorney's fees can be made. First, the party seeking the award must be the "prevailing party." Second, the court must determine that the agency's actions in pressing its claim were not substantially justified. Finally, the court must determine whether there are any special circumstances

---

3. Of course, a county administrator serves at the pleasure of the county council. *See* S.C.Code Ann. § 4–9–620. Thus, the council could terminate the administrator if the administrator's actions began interfering with the operation of the office of an elected official. However, should a dispute arise between county council and the elected official, the fact that the administrator must answer to county council may be of little comfort to the elected official.

that would make an otherwise appropriate award of attorney's fees unjust. *Heath v. Aiken County*, 295 S.C. 416, 420, 368 S.E.2d 904, 906 (1988); *see also Heath v. Aiken County*, 302 S.C. 178, 182–84, 394 S.E.2d 709, 711–12 (1990) (explaining application of statutory factors).

In this case, the trial court stated in its order that "this action was necessary and beneficial to the citizens of Horry County to avoid future interruption of County business, and, therefore, attorneys fees are warranted and should be paid." Whether an action was "necessary" or "beneficial" is not the proper standard for awarding attorney's fees under section 15–77–300, and the circuit court's order makes no mention of any of the facts required by section 15–77–300.

Because the circuit court failed to make the required findings, we reverse the award of attorney's fees and remand for reconsideration of the issue. *See Heath*, 295 S.C. at 420, 368 S.E.2d at 906 (reversing and remanding award of attorney's fees where trial court's order failed to include findings required by section 15–77–300). On remand, the circuit court shall issue an order sufficiently setting forth the findings required by S.C.Code Ann. § 15–77–300.

## IV. CONCLUSION

To summarize, we conclude that, absent express statutory authority, a county administrator or other county governing body has no authority to suspend the employees of an elected official, even if, as here, suspension is provided for in the county's personnel policies. We therefore affirm the circuit court's declaration that the Administrator lacked the authority to suspend the Auditor's employees. However, we reverse the award of attorney's fees to the Auditor and remand for reconsideration of the issue in light of the factors required by S.C.Code Ann. § 15–77–300.

Accordingly, for the foregoing reasons, the decision of the circuit court is hereby

**AFFIRMED IN PART, REVERSED IN PART, and RE-MANDED.**

CONNOR, ANDERSON, HUFF, STILWELL and HOWARD, JJ., and HOWARD P. KING, Acting Judge, concur.

CURETON, J., concurs in part and dissents in part in a separate opinion in which GOOLSBY, J., concurs.

CURETON, Judge (Concurring in part and dissenting in part):

I concur in Parts I and III of the majority opinion, but disagree with Part II of the opinion. Therefore, Part I of my prior opinion in this case, *Eargle v. Horry County,* Op. No. 2880 (filed August 17, 1998) (Davis Adv. Sh. No. 29), with minor modifications, is published as my dissent.

The Home Rule Act, codified at S.C.Code Ann. §§ 4-9-10 through -1230 (1986 & Supp.1998), was enacted to comply with the mandate of Article VIII, § 7 of the South Carolina Constitution, which requires the General Assembly to provide for the structure and organization of not more than five alternative forms of county government. *See Hospitality Ass'n of South Carolina, Inc. v. County of Charleston,* 320 S.C. 219, 464 S.E.2d 113 (1995); *Duncan v. York County,* 267 S.C. 327, 228 S.E.2d 92 (1976); *see also* Act No. 283, 1975 S.C.Acts 692, § 1. The Home Rule Act further provides by general law for the "... powers, duties, functions, and the responsibilities of counties." *See* S.C. Const. Art. VIII §§ 7 and 9; *se also Brown v. County of Horry,* 308 S.C. 180, 417 S.E.2d 565 (1992); Act No. 283, 1975 S.C.Acts 692, § 1.

South Carolina Code Ann. § 4-9-30(7) (Supp.1998) authorizes a council-administrator form of government with authority to:

> develop personnel system policies and procedures for county employees by which all county employees are regulated except those elected directly by the people, and to be responsible for the employment and discharge of county personnel in those county departments in which the employment authority is vested in the county government. This employment and discharge authority does not extend to any personnel employed in departments or agencies under the direction of an elected official or an official appointed by an authority outside county government. ...

Angus argues Sections 4–9–30 and 4–9–630 [1] give her authority to discipline all county employees pursuant to policies adopted by Horry County. She further argues that Section 4–9–30(7) limits her authority to enforce county personnel policies and procedures pertaining to employees of elected officials only with regard to their *hiring* and *firing*.

In its order, the circuit court found that "[a]s a supervisor of county employees, [Eargle] has the responsibility to advise the employees of the county of the personnel policies and procedures as well as to enforce these policies." Likewise, the court found "[Angus] does have the right to administer and enforce the county's personnel policies and procedures." The circuit court further found that Eargle's employees are subject to these personnel policies and procedures. The circuit court, however, determined the "[s]uspension of an employee stems from the right to hire and fire an employee since it removes the employee from the workplace for a definite or indefinite period of time depending on the circumstances." The court also concluded "[r]emoval of employees from the workplace by suspension interferes with an elected official's ability to perform the duties and responsibilities of his or her office." Thus, the circuit court concluded Angus's "authority to administer personnel policies did not extend to the right to suspend an elected official's employees."

The trial court's holding that the county policies in question apply to Eargle's employees [2] is the law of this case, as is its holding that Angus has the right to enforce the policies. On the other hand, Angus has not appealed the trial court's finding that Eargle also has the authority to enforce the county's personnel policies. Likewise, both Eargle and Angus agree that the appropriateness [3] of the sanctions imposed is not an issue in this appeal. Under the unique posture of this case, the only pertinent inquiry is whether by virtue of Section

---

1. Section 4–9–630(7) (1986) makes the administrator "responsible for the administration of county personnel policies...."

2. It is to be noted that Eargle does not claim the county personnel policies are unconstitutional or in excess of statutory authorization.

3. It is difficult not to focus on the appropriateness of the sanctions under the circumstances of this case. However, the affected employees may pursue this matter through the county's grievance procedure.

4–9–650,[4] Angus is deprived of the right to discipline Eargle's employees because the discipline involves temporary suspensions, although such discipline is provided for by valid county personnel policies.

Eargle argues that under Section 4–9–650, the county administrator has no authority over her as an elected official and that prohibition also relates to county employees hired by her. Further, that inasmuch as the right to temporarily suspend her employees interferes with the execution of her duties, by implication Angus does not have the right to temporarily suspend, even as a disciplinary measure. She also argues that while county personnel policies may provide for the right to suspend employees, that power may not be exercised by Angus because such right is encompassed in the right to discharge, which only she possesses.

The South Carolina cases I have been able to locate on this subject address only interim suspensions incident to the right to remove public officials. The consensus of the cases appears to be that an official with the authority to remove another official for cause also has the authority to temporarily suspend if the suspension is taken with the view toward removing the official from office. *State ex rel. Thompson v. Seigler,* 230 S.C. 115, 94 S.E.2d 231 (1956); *State v. Hough,* 103 S.C. 87, 87 S.E. 436 (1915); *McDowell v. Burnett,* 92 S.C. 469, 75 S.E. 873 (1912); *but see Rose v. Beasley,* 327 S.C. 197, 489 S.E.2d 625 (1997) (holding the governor's right to suspend a state official for reasons not encompassed in S.C. Const. Art VI, § 8 or statutory law, is not incident to the right of removal). This consensus accords with the general law. *James v. Hunt,* 43 N.C.App. 109, 258 S.E.2d 481 (1979); 56 Am.Jur.2d *Municipal Corporations, Counties, and Other Political Subdivisions* § 312 (1971); 62 C.J.S. *Municipal Corporations* § 504 (1949).

The *Seigler, McDowell* and *Hough* cases, however, are not very helpful in resolving this dispute because they involve public officers [5] with fixed terms of office, rather than employ-

---

**4.** Section 4–9–650 (1986) states "the county administrator shall exercise no authority over any elected officials of the county whose offices were created either by the Constitution or by the general law of the State."

**5.** A public officer is defined in *Sanders v. Belue,* 78 S.C. 171, 58 S.E. 762 (1907), as "one who is charged by law with duties involving an

ees with no fixed term of office or even the right to continued employment. More importantly, the suspensions which were ordered in those cases were taken in conjunction with the officials' authority to remove for misconduct in office. Here, the temporary suspensions were imposed as disciplinary measures on employees, not in contemplation of removal from office or discharge.

The trial court did not conclude, nor is it argued on appeal, that the statutes in issue are ambiguous. Thus, we are required to construe them according to their plain and ordinary meaning. *Ray Bell Constr. Co. v. The School District of Greenville County,* 331 S.C. 19, 501 S.E.2d 725 (1998). I am convinced from reading the statutes that the legislature intended to grant to counties the authority to discipline their employees and to regulate employees working for elected officials, except in the areas of hiring and firing. To that end, counties must necessarily be able to enforce their disciplinary measures within the framework of their personnel policies and procedures. The fact that Eargle may also be authorized to enforce Horry County's policies does not eviscerate the authority of the administrator. After all, Eargle is the head of a county department or office that employs county personnel and, as such, is expected to enforce county personnel policies and procedures relating to those employees.

Nevertheless, there is a clear message in the Home Rule Act that elected officials are solely responsible for the execution of the duties of their offices. Moreover, the operation of these offices is dependent on the work of county employees. Like the circuit court, I am also concerned that in the abstract, but not in the instance involved here, to permit an administrator to temporarily suspend the employees of an elected official could adversely impact the official's ability to perform her statutory duties. However, there are numerous actions that could be taken by the county that could adversely

exercise of some part of the sovereign power, either small or great, in the performance of which the public is concerned, and which are continuing, and not occasional or intermittent.... Conversely, one who merely performs the duties required of him by persons employing him under an express contract or otherwise, though such persons be themselves public officers, and though the employment be in or about a public work or business, is a mere employee."

affect the operation of an elected official's office, the most obvious being reductions in funding and reductions in force.

The public has an interest in the smooth operation of all public offices, whether those offices are operated by elected officials or department heads answerable to county officials. *See Anders v. County Council,* 284 S.C. 142, 325 S.E.2d 538 (1985). The responsibility to satisfy this concern of the public should be shared by both the elected official and the county council through its administrator. I believe the power granted the county by Section 4-9-30(7) to "develop personnel system policies and procedures" for "regulation" of county employees and the provisions of Section 4-9-630(7) giving the administrator the authority to administer personnel would be lacking if there were no means by which to enforce these policies and procedures short of total reliance on the good graces of the elected official. To ensure a county's "smooth operation," it must be able to even-handedly and consistently enforce its personnel policies. Section 4-9-30(7) authorizes the county to accomplish this worthy goal by permitting the county, through its administrator, to discipline individuals employed in the offices of elected officials, including the ability to temporarily suspend [6] such employees.

This conclusion is supported by the case of *Heath v. Aiken County (Heath I)*, 295 S.C. 416, 368 S.E.2d 904 (1988). In *Heath I,* the supreme court concluded that while a sheriff had the unfettered authority to discharge his deputies, the discharge of other office employees, notwithstanding Section 4-9-30(7), was subject to reinstatement by the county grievance committee. The court stated:

The common and statutory law which shapes the relationship between sheriff and deputy does not carry over to a sheriff's relationship with other department personnel. Sheriff Heath asserts no reason, nor do we discern any, why the legislature cannot grant a sheriff the power to hire and fire personnel yet limit that power through the grievance

---

6. We are not asked to decide whether a county administrator has the right to indefinitely suspend a county employee who works for an elected official, inasmuch as an indefinite or long-term suspension may be tantamount to discharge. Nevertheless, the proper vehicle for addressing such an issue would be to challenge the validity of a county regulation which authorized such an action.

hearing procedure. Section 23–13–10 grants a sheriff unreviewable employment and discharge authority over deputies; no corresponding statute exists for other department personnel. The legislature's intent to include sheriff's department personnel other than deputies as "employees" under Section 4–9–30(7) is clear from the statutory language itself.

*Id.* at 420, 368 S.E.2d at 906.[7]   Under the *Heath I* scenario, Eargle's employees fall into the category of the "other department personnel." Sheriff Heath no doubt had the same concern that Eargle has that interference with the discipline of any of his personnel could affect his ability to carry out the duties of his office.

Finally, I would reject any suggestion that the right to temporarily suspend Eargle's employees is encompassed in her exclusive right to discharge such employees. This claim is effectively disposed of by the case of *Rose v. Beasley,* 327 S.C. 197, 489 S.E.2d 625 (1997). There, our supreme court rejected the governor's argument that the power of suspension was "an incident of his statutory power of removal." *Id.* at 206, 489 S.E.2d at 629. The court found "this proposition clearly conflicts with well-established South Carolina precedent" and that "the governor can neither appoint to office nor suspend or remove from office unless the power to do so is conferred upon him by the Constitution or statute." *Id.* The Home Rule Act grants to Eargle only the authority to hire and fire county personnel working for her. I would therefore hold the right to discipline county personnel by way of temporary suspension is specifically authorized by Section 4–9–30(7). Even if it is not specifically authorized by Section 4–9–30(7), such authority is by implication reserved to the county by Section 4–9–25.

In summary, the plain language of Section 4–9–30(7) supports the authority of Angus to discipline county employees working in Eargle's office, including under the unique posture of this case, the right to temporarily suspend those employees. That is not to say that Angus may not, as she apparently does,

---

7. Section 4–9–30(7) was amended by Act No. 312, 1988 S.C.Acts 2528, § 1 to state that "any employee discharged shall follow the grievance procedures as established by county council in those counties where the grievance procedures are operative, retaining all appellate rights provided for in the procedures."

and should, for other department heads who are not elected officials, delegate that authority.

GOOLSBY, J., concurs.