545 S.E.2d 276

Lois EARGLE, in her capacity as Horry
County Auditor, Respondent,

v.

HORRY COUNTY, a Body Politic Subdivision of the State of
South Carolina, and Linda Green Angus, in her capacity
as Horry County Administrator, Petitioners.

No. 25275.

Supreme Court of South Carolina.

Heard Nov. 15, 2000.
Decided April 2, 2001.

450

John P. Henry and Emma Ruth Brittain, both of the Thompson Law Firm, of Myrtle Beach, for petitioners.

Sandra J. Senn, of Charleston, and Stephanie P. McDonald, of Mount Pleasant, for respondent.

John Hamilton Smith, of Young, Clement, Rivers & Tisdale, of Charleston, for amici curiae.

PLEICONES, Justice:

We granted certiorari to review the Court of Appeals' decision in *Eargle v. Horry County*, 335 S.C. 425, 517 S.E.2d 3 (Ct.App.1999), wherein that court affirmed the trial court's determination that South Carolina law does not authorize a county administrator to suspend employees of elected officials. The Court of Appeals reversed the trial court's award of attorney's fees, remanding for a determination whether the county was substantially justified in pressing its claim. We affirm.

## FACTS/PROCEDURAL HISTORY

This dispute arose after Lois Eargle, ("the Auditor") the elected auditor of Horry County, and three of her employees were involved in an automobile accident while en route to a co-worker's father's funeral. The accident involved a county owned vehicle and occurred during normal county business hours. Two of the employees were paid hourly, while the third was a salaried worker with supervisory responsibilities. In violation of established County policy, neither hourly employee clocked out of work prior to leaving their jobs. After the accident, but prior to the initiation of disciplinary proceedings, the two hourly employees submitted leave forms for the time they were away from their jobs.

Upon learning of the accident and the employees' failure to clock out, Horry County Administrator Linda Angus Green ("the Administrator") met with the Auditor to discuss disciplining the three employees.[1] When the two could not reach an agreement on the appropriate discipline, the Administrator purported to suspend the employees.[2]

Ultimately, the Auditor brought a declaratory judgment action against Horry County ("the County") and the Administrator (collectively, "Petitioners") seeking a determination

1. Horry County operates under the council-administrator form of government pursuant to S.C.Code Ann. §§ 4-9-610, *et seq.* (1986).

2. The hourly employees were to be suspended for three days without pay for violating the County's time clock policy. The salaried employee was to be suspended for five days without pay for failing to supervise the hourly employees and for unauthorized use of a County automobile.

whether the County, through the Administrator, had the statutory authority to suspend employees of the Auditor's Office. The parties agreed to stay enforcement of the suspensions pending the outcome of this litigation. The trial court determined the County lacked such authority and ordered the County to reimburse the Auditor's attorneys' fees.

Petitioners appealed. A divided panel of the Court of Appeals reversed, and the Auditor petitioned for rehearing. After granting the Auditor's petition, the Court of Appeals, *en banc*, affirmed the trial court's ruling that the Administrator's authority to enforce county personnel policies did not include the authority to suspend employees of elected officials. The court reversed the award of attorney's fees to the Auditor and remanded for express findings as required by S.C.Code Ann. § 15–77–300 (Supp.1999). We granted certiorari to review both rulings.

## ISSUE I

Does a County Administrator have authority to suspend employees of an elected official?

## DISCUSSION

Resolution of this dispute involves construction of three sections of the Home Rule Act ("the Act"), codified at S.C.Code Ann. §§ 4–9–10, *et seq.* (1986 and Supp.1999). Under one provision of the Act, county governments are empowered

> (7) to develop personnel system policies and procedures for county employees by which *all county employees are regulated except those elected directly by the people,* and to be responsible for the employment and discharge of county personnel in those county departments in which the employment authority is vested in the county government. *This employment and discharge authority does not extend to any personnel employed in departments or agencies under the direction of an elected official or an official appointed by an authority outside county government. . . .*

S.C.Code Ann. § 4–9–30(7) (Supp.1999) (emphasis added).

Another section of the Act sets forth the powers and duties of the County Administrator as follows:

(1) to serve as the chief administrative officer of the county government;

(2) to execute the policies, directives and legislative actions of the council;

. . .

(7) to be responsible for the administration of county personnel policies including salary and classification plans approved by council;

(8) to be responsible for employment and discharge of personnel subject to the provisions of subsection (7) of § 4–9–30;

. . . .

S.C.Code Ann. § 4–9–630 (1986). Addressing the Administrator's authority over elected officials, the Act provides "[w]ith the exception of organizational policies established by the governing body, the county administrator shall exercise no authority over any elected officials of the county whose offices were created either by the Constitution or by the general law of the State." S.C.Code Ann. § 4–9–650 (1986). Under the council-administrator form of government, county auditors are elected officials. *See* S.C.Code Ann. § 4–9–60 (1986).

 In construing the above statutes, we recognize that "[a]ll rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in the light of the intended purpose of the statute." *Broadhurst v. City of Myrtle Beach Election Comm'n*, 342 S.C. 373, 380, 537 S.E.2d 543, 546 (2000). We note further that "[t]he decision to grant a declaratory judgment is a matter which rests in the sound discretion of the trial court and will not be disturbed absent a clear showing of abuse." *Garris v. Governing Bd. of South Carolina Reinsurance Facility*, 319 S.C. 388, 390, 461 S.E.2d 819, 820 (1995). "An abuse of discretion occurs where the trial court is controlled by an error of law. . . ." *City of Columbia v. Pic–A–Flick Video, Inc.*, 340 S.C. 278, 281, 531 S.E.2d 518, 521 (2000).

Petitioners argue the Court of Appeals erred in determining §§ 4–9–30(7) and 4–9–630 do not permit the Administrator to impose temporary suspensions upon persons employed by

elected officials when enforcing County personnel policies. For support, they rely on this Court's decision in *Heath v. County of Aiken*, 295 S.C. 416, 368 S.E.2d 904 (1988) ("*Heath I*").

In *Heath I*, the Court determined that, with the exception of sheriff's deputies, all other employees hired and fired by the County Sheriff were entitled to grievance rights as provided in S.C.Code Ann. § 4–9–30(7).[3] The Court could discern no reason why the legislature could not

> grant a sheriff the power to hire and fire personnel yet limit that power through the grievance hearing procedure.... The legislature's intent to include sheriff's department personnel other than deputies as "employees" under Section 4–9–30(7) is clear from the statutory language itself.

*Id.* at 420, 368 S.E.2d at 906. Petitioners would apparently expand the Court's holding in *Heath I* to grant an Administrator authority to suspend elected officials' employees. We do not agree that *Heath I* supports this position. *Heath I* construed an unambiguous portion of the Act which limited elected officials' authority; it did not expand a county's authority beyond that explicitly granted in the statute.

■ The Administrator contends that the power granted her in S.C.Code Ann. § 4–9–630(7) to administer county personnel policies necessarily encompasses the power to suspend the Auditor's employees, as she sought to do here. It is noteworthy that a number of the Horry County personnel policies call for dismissal of the employee for a first or second violation.[4] The plain language of § 4–9–30(7) precludes the Administrator from imposing such a punishment upon any employee of an elected official. The fact that the Administrator could not legally enforce the maximum punishment calls into question Petitioners' argument that granting the Adminis-

---

3. At the time *Heath I* was decided, § 4–9–30(7) provided that "[a]ny employee discharged by the administrator, elected official or designated department head shall be granted a public hearing before the entire county council [upon request]...." It further granted county council the authority to sustain the discharge, subject to judicial review, or to reverse the dismissal, in which case the employee would be reinstated.

4. The violations for which employees were to be suspended in the instant case are punishable by dismissal in the case of a second violation.

trator suspension powers is necessary to insuring fiscal accountability and employee morale. The argument ignores the fact that many provisions of the County's personnel policies are simply not enforceable by the Administrator against elected officials' employees under the explicit language of § 4-9-30(7).

Petitioners also cite several opinions of the Attorney General in support if their position. Most of these opinions address the counties' authority to set county work hours and to enact personnel policies for all county employees. The opinions do not address a county's ability to enforce these policies against elected officials' employees. Moreover, this Court is not bound by opinions of the Attorney General. *Price v. Watt*, 280 S.C. 510, 313 S.E.2d 58 (Ct.App.1984).

The Auditor testified the suspensions would adversely affect her ability to perform her duties. She claimed that staggering the suspensions or providing her with temporary staff would not alleviate these problems. Petitioners did not dispute these claims. Taking the Auditor's assertions as true, the suspensions could be construed as an exercise of authority by the Administrator over the Auditor in violation of S.C.Code Ann. § 4-9-650.

The Court of Appeals correctly determined that the County's authority to promulgate personnel policies applicable to all county employees does not cloak the Administrator with the power to suspend employees of elected officials. The policy considerations cited by the Court of Appeals in support of its decision are persuasive. The facts of this case bear out some of these concerns. It is undisputed that the employees the Administrator sought to suspend were acting with the permission of and under the direction of their elected supervisor. Granting the Administrator the authority to suspend in this case would require employees of elected officials to choose whose directives they will follow, those of the elected official or those of the Administrator. This result could not have been intended by the legislature. *See Broadhurst v. City of Myrtle Beach Election Comm'n, supra* (statutes are to be construed to effectuate legislative intent).

The Court of Appeals pointed out that the Auditor is directly elected by and accountable to the public, while the

Administrator is not elected and only indirectly accountable to the public, through the County Council. These facts weigh in favor of denying the Administrator the authority sought herein.[5] If the electorate is dissatisfied with the manner in which the elected Auditor operates her office, it can express its dissatisfaction at the ballot box.

For the reasons given by the Court of Appeals in *Eargle v. Horry County, supra,* and for the reasons given above, we affirm the determination that the Administrator lacked the authority to suspend the Auditor's employees.

## *ISSUE 2*

Did the Court of Appeals err in remanding the case to the trial court for a determination on the issue of attorney's fees?

## *DISCUSSION*

Petitioners argue the Court of Appeals erred in remanding to the circuit court the question of attorney's fees because the Auditor is not entitled to recover attorneys' fees as a matter of law. We disagree and affirm the Court of Appeals' decision to remand.

The issue is controlled by S.C.Code Ann. § 15–77–300 (Supp.1999) which provides in part:

In any civil action brought by the State, any political subdivision of the State or any party who is contesting state action, unless the prevailing party is the State or any political subdivision of the State, the court may allow the prevailing party to recover reasonable attorney's fees to be taxed as court costs against the appropriate agency if:

---

**5.** Apparently, the dissent would have this Court forego its duty to interpret statutes and delegate that responsibility to the General Assembly. Unfortunately, we do not have that luxury. Curiously, while criticizing the majority for impermissibly adding to the language of the statute, the dissent is adding its own language, transforming the county's authority "to develop personnel system policies and procedures ..." by which employees of elected officials are regulated, into authority "to develop **and enforce**" its policies against such employees. This is not what the statute says. The statute does say that the county is not to exercise "employment authority" over these employees. The suspensions sought to be imposed here clearly constitute exercise of such authority.

(1) The court finds that the agency acted without substantial justification in pressing its claim against the party; and

(2) The court finds that there are no special circumstances that would make the award of attorney's fees unjust.

The Court of Appeals reversed the trial court's award of attorney's fees to the Auditor, finding the trial court did not make specific findings as to the requirements of "substantial justification" and "special circumstances." The court found

the trial court stated in its order that "this action was necessary and beneficial to the citizens of Horry County to avoid future interruption of County business, and, therefore, attorneys fees are warranted and should be paid." Whether an action was "necessary" or "beneficial" is not the proper standard for awarding attorney's fees ... and the circuit court's order makes no mention of any of the factors required by section 15–77–300.

*Id.* at 434, 517 S.E.2d at 8.

■ We find that the trial court's order adequately addresses the issue of special circumstances: the order expressed the court's opinion that the Auditor's actions enured to the benefit of the citizenry of Horry County. *See Heath II, supra,* (where litigation enured to the benefit of the citizens of Aiken County, any special circumstances were circumstances making it unjust not to award attorney's fees). In light of these findings, a determination on special circumstances is not necessary on remand; however, a finding on substantial justification is required.

## CONCLUSION

■ We hold that the Home Rule Act does not empower a county administrator to impose suspensions upon employees of elected officials. We remand to the trial court for a determination of the issue of attorney's fees.

AFFIRMED.

TOAL, C.J., MOORE and WALLER, JJ., concur.

BURNETT, J., dissenting in a separate opinion.

BURNETT, Justice, dissenting:

For the reasons expressed in Judge Cureton's dissent from the Court of Appeals' opinion in this case, I respectfully disagree. I also wish to add some concerns of my own about what I perceive to be the majority's overly broad construction of the relevant statutes.

The cardinal rule of statutory construction is that the Court is to ascertain and effectuate the actual intent of the legislature. *Mid–State Auto Auction of Lexington, Inc. v. Altman*, 324 S.C. 65, 476 S.E.2d 690 (1996). This Court cannot construe a statute without regard to its plain and ordinary meaning, and may not resort to subtle or forced construction in an attempt to limit or expand a statute's meaning. *Paschal v. State of South Carolina Election Comm'n*, 317 S.C. 434, 454 S.E.2d 890 (1995).

S.C.Code Ann. § 4–9–30(7) (Supp.1999) authorizes the county to

develop personnel system policies and procedures for county employees by which *all county employees* are regulated *except those elected directly by the people*, and to be responsible for the employment and discharge of county personnel in those county departments in which the employment authority is vested in the county government. This *employment and discharge authority* does not extend to any personnel employed in departments or agencies under the direction of an elected official. . . .

(emphasis added). Section 4–9–650 provides that "[w]ith the exception of organizational policies established by the governing body, the county administrator shall exercise no authority over *any elected officials* of the county whose offices were created either by the Constitution or by the general law of the State." (emphasis added). There is no contention of any ambiguity in either of these statutory provisions. Therefore, we cannot ignore the statutes' plain and ordinary meaning or resort to a subtle or forced construction in an attempt to expand their meaning.

The majority reads § 4–9–30(7) as if it said: "employment, discharge, *and disciplinary* authority" and § 4–9–650 as if it said: "the county administrator shall exercise no authority over any elected officials *or their staff*." Plainly, those words

are nowhere to be found in the statute. When read together, §§ 4-9-30(7) and 4-9-650 provide that

(1) a county administrator has authority over all county employees except elected officials, and

(2) elected officials hire and fire their own staff.

The statutes in no way exempt the staff of elected officials from the rules applicable to all other county employees, nor from the enforcement of those rules by the county administrator.

The elected official's exclusive power to discharge does not include the power to suspend. *See Rose v. Beasley,* 327 S.C. 197, 489 S.E.2d 625 (1997) (rejecting the Governor's argument that the power to suspend was an incident of his statutory power to remove from office). Arguably, nor does the elected official's power to discharge members of her staff deprive her staff of the protections of county policies, such as grievance procedures. *See Heath v. Aiken County (Heath I),* 295 S.C. 416, 368 S.E.2d 904 (1988) (sheriff's department personnel other than deputies are county employees under § 4-9-30(7) and therefore subject to reinstatement by the county grievance committee). Thus, while county employees working under the direction of an elected official remain subject to county rules, they also benefit from the security provided by those rules.

I am aware of the difficulties created by permitting the county administrator to discipline members of the auditor's staff. A person cannot serve two masters. But the lack of a clear chain of command is a systemic problem that should be resolved in the legislative forum. Moreover, I am equally aware of the difficulties created by *not* permitting the county administrator to discipline members of the auditor's staff, among them the morale problems that would result from effectively exempting some county employees, and not others, from rules purportedly applicable to all.

Although I believe the legislature clearly intended to give county administrators the authority to enforce county policies against all county employees not directly elected by the people, I recognize that the statute leaves many unanswered questions regarding the respective disciplinary roles of the supervising elected official and the county administrator.

This is yet another reason this issue should be decided in the General Assembly, and not by judicial fiat.

A responsible elected official should not ask his or her staff members to violate county policy. Once county policy has been violated, however, to construe these statutes to immunize an elected official's staff from discipline by the county administrator is to read language into the statutes which they do not contain.