20244

Don E. MURPHREE, Individually and representing all other residents, taxpayers and property owners within Aiken County and the service area of Aiken County Public Service Authority, Plaintiff-Appellant, v. William J. MOTTEL, Chairman, et al., Respondents-Appellants.

(226 S. E. (2d) 36)

*Howard M. Hickey, Jr., Esq.,* of Aiken, *for Plaintiff-Appellant,*

*Karen LeCraft Henderson, Asst. Atty. Gen.,* of Columbia, and *John H. Williams* and *William G. Lynn, Jr.,* of Aiken, *for Respondents-Appellants,*

*Messrs. Garvin, Grant, Fox, Nuessle Zier & Burkhalter,* and *John H. Williams,* of Aiken, and *Sinkler, Gibbs, Simons & Guerard,* of Charleston, *for Respondents-Appellants,*

*Howard M. Hickey, Jr., Esq.,* of Aiken, *for Plaintiff-Appellant, as Respondent,*

June 16, 1976.

LITTLEJOHN, Justice:

This declaratory judgment action was commenced by plaintiff Don E. Murphree, in his individual capacity and representing all other taxpayers within Aiken County and within the service area of the Aiken County Public Service Authority. The defendants are the members of the Aiken County Public Service Authority (Authority), the members of the Board of Commissioners of Aiken County (Board), and Daniel R. McLeod as Attorney General of the State of South Carolina.

The complaint challenges (1) the constitutionality of Act No. 542 of the General Assembly of South Carolina of 1973, establishing the Aiken County Public Service Authority, and (2) the validity of a special election held in Aiken County on November 5, 1974. The prayer for relief asks the court to enjoin the Board from proceeding with the acquisition of the Horse Creek Basin Wastewater Treatment Facility.

The answer of the Board alleges that it has authority to procure the treatment facility by reason of the Revenue Bond Act for Utilities (§§ 59-361 to 59-415, inclusive, Code of Laws of South Carolina of 1962, *as amended*) independent of Act No. 542 and without the necessity of an election. The prayer for relief asks the court to hold that it is authorized pursuant to the Revenue Bond Act for Utilities to acquire and operate the treatment facility and finance the same through the issuance of revenue bonds without the necessity of holding an election on the question of issuing bonds.

Act No. 542 created the Authority. It is described as a body corporate and politic, with the authority to supply water and provide sewerage services within a geographical area composing a substantial portion, but not all, of Aiken County. It sets forth in great detail the powers and duties of the Authority.

The Board was created by Act No. 1078 of the Acts of 1972. It is the governing body of Aiken County.

In the court below, it was the contention of the plaintiff that Act No. 542 of 1973 was unconstitutional as being in violation of new Art. VIII, § 7 of the South Carolina Constitution. This prohibits the enactment of "laws for a specific county." The lower court ruled that this act was for a specific county and declared it unconstitutional. There has been no appeal from this ruling.

The lower court held that an election was required and that the vote taken satisfied the requirement of new Art. VIII, § 16, and ruled that the election was effective to authorize the acquisition of the Horse Creek Basin Wastewater Treatment Facility by the Board. It is from this ruling that the plaintiff has appealed.

The Board has appealed, also, alleging that the lower court should have ruled that Aiken County (the Board) may acquire the treatment facility without the necessity of holding an election on the question.

The Authority has appealed, contending that the lower

court erred in failing to hold that the Board may acquire the treatment facility without an election.

Inasmuch as the statute creating the Authority has been declared unconstitutional, and inasmuch as that ruling has not been appealed, the Authority has no standing in this Court and its appeal is dismissed. .

The contested election came to be held in Aiken County as follows:

On September 16, 1974, the Authority, at a meeting of its members, concluded that Art. VIII, § 16 made it necessary to hold a referendum on the question of whether the treatment facility should be acquired. By resolution, the Authority directed its attorney to take appropriate action to see that the referendum question be presented to the electors of Aiken County in the general election held on November 5, 1974. No provision was made for legally advertising the election, and no advertisement of the election was published other than news stories and editorials.

On September 20, 1974, the Aiken County Election Commission adopted a resolution directing that the following question be placed on the ballot:

"That the Aiken County Board of Commissioners through the Aiken County Public Service Authority be authorized to acquire, purchase, construct, and operate the Horse Creek Basin Wastewater Treatment Facility, consisting of treatment plant, trunk lines and connector lines; provided that the sole funds utilized for said acquisition, purchase, construction, and operation shall be: (1) Money from Federal and State grants, (2) Revenues earned from the operation of the facility, (3) Bonds payable out of the revenue earned from the operation of the facility.

    Yes—
    No—."

Sometime after November 5, 1974, the Aiken County Election Commission certified that 12,368 electors voted "yes" and 3,092 voted "no."

Section 16 of Art. VIII reads in pertinent part as follows:

"Any county or consolidated political subdivision created under this Constitution may, *upon a majority vote of the electors* voting on the question in such county or consolidated political subdivision, acquire by initial construction or purchase and may operate water, sewer, transportation or other public utility systems and plants other than gas and electric; . . ." (Emphasis added.)

The lower court ruled that the election was an effective compliance with this constitutional provision and held that the Board could acquire the treatment facility. It held that no formal notice of the election was given or required.

The lower court properly ruled that the constitutional provision is self-executing, however, there was no authorization for the election.

"The right or power to hold an election must be based on authority conferred by law, and an election held without affirmative constitutional or statutory authority, or contrary to a material provision of the law, is universally recognized as being a nullity, even thought it is fairly and honestly conducted." 29 C. J. S. Elections § 66.

The Authority had no right to call for an election. It was not the governing body of the county or of a consolidated political subdivision as defined by South Carolina Constitution, Art. VIII, § 12. It represented only a portion of Aiken County. The vote required by Art. VIII, § 16 was a "majority vote of the electors voting on the question in such county . . ." Hence, § 16 contemplates that the governing body of the county or consolidated political subdivision will call for the election. Since the Authority had no authority to call for an election, the election is invalid.

We now reach the question of whether the Board has authority independent of the election and of the constitutional provision, to acquire the treatment facility.

While the Revenue Bond Act for Utilities empowered counties to acquire certain public works through revenue bonds without the necessity of holding an election, § 16 of Art. VIII, quoted hereinabove, was ratified since the enactment of the statutes. The Revenue Bond Act must now be viewed as having been amended to the extent that counties are now required to satisfy the election requirements of Art. VIII, § 16, prior to their acquisition of certain municipal public works. In 16 Am. Jur. (2d) Constitutional Law § 49, it is stated:

"It is also the general rule that a statute existing at the adoption of a constitution cannot be upheld if it is opposed to the plain terms of the constitution. If there is a conflict between a statute and such a constitutional provision, the former must give way, since all statutes which are actually inconsistent with a new constitution are repealed by implication, unless they constitute contracts within the meaning of the Federal provision prohibiting an impairment of the obligation of contracts. Similary, an amendment to the Constitution must be held to amend the existing statute law to agree with such an amendment. The exception must be noted, however, that where the constitutional provision is not self-executing, in some instances an inconsistent state statute is not thereby superseded. If it is self-executing, it necessarily annuls all inconsistent acts of the legislature passed prior to its adoption." (Footnotes omitted.)

It follows that before Aiken County may acquire the treatment facility properties, it must obtain a favorable vote, now required by the constitution, at the instigation of the county governing body after appropriate legal notice and publication.

Reversed.

LEWIS, C. J., and NESS, RHODES and GREGORY, JJ., concur.