633 S.E.2d 492

**Susie CORNELIUS, individually, and on behalf of all others similarly situated, Respondent,**

v.

**OCONEE COUNTY, Appellant.**

No. 26189.

Supreme Court of South Carolina.

Heard June 6, 2006.

Decided July 24, 2006.

532

Bradley A. Norton and Julie Elisabeth. Mahon, both of Norton, Ballenger and Mahon, of Walhalla, and Matlock Elliott and Joshua Howard, both of Haynsworth, Sinkler and Boyd, of Greenville, for Appellant.

James G. Carpenter and Jennifer J. Miller, both of Carpenter Law Firm, of Greenville, for Respondent.

534

Acting Justice HILL:

In 1976, Oconee County electors approved a referendum authorizing the County to own and operate a wastewater treatment facility, but limiting funding for this service to three sources and limiting service to "portions of Oconee County." Oconee County appeals a circuit court order holding that these restrictions apply to any expansion of County's sewer system, and awarding respondent Cornelius attorneys' fees pursuant to S.C.Code Ann. § 15–77–300 (2005). We affirm.

## FACTS

The 1976 referendum (Referendum) authorized Oconee County "to acquire, purchase, construct and operate a wastewater treatment facility to serve portions of Oconee County, consisting of a treatment plant, trunk lines, connector lines and other necessary and appropriate apparatus. *Provided and upon condition that the sole funds* utilized for the acquisition, purchase, construction, maintenance and operation of such facilities shall be obtained and derived from: (1) Grants from Federal and State agencies; (2) Revenue earned and derived from the operation of the facilities to be constructed and paid only by the users thereof; and (3) Bonds payable from revenues produced and earned from the operation of such facilities." (emphasis added). Pursuant to the Referendum, County built and operates a sewer system serving parts of the County.

In December 2004, respondent Cornelius, a County citizen and taxpayer, brought this declaratory judgment action against County. Cornelius asserted County had adopted and intended to implement a Master Plan that, among other things, anticipated construction of new wastewater treatment facilities. She alleged that County had approved a contract with SCDOT to construct a treatment facility to serve an interstate highway "Welcome Center," and that the contract included a cap on sewage treatment charges. Cornelius claimed County intended to fund these projects and to offset any losses using *ad valorem* tax dollars, and contended that this funding scheme violated the conditions set by the 1976

Referendum.[1]  County acknowledged its plans to fund sewer expansion using tax monies.

The circuit court granted Cornelius summary judgment, holding that County may fund sewer projects only within its boundaries, and only using the three types of funding listed in the Referendum.  The circuit court subsequently awarded Cornelius $9,450 in attorneys' fees pursuant to § 15–77–300. County appeals both orders.

## ISSUES

1) Whether the circuit court erred in holding County was bound by the terms of the Referendum.

2) Whether the circuit court abused its discretion in awarding Cornelius attorneys' fees.

## ANALYSIS

### A.  Referendum

The South Carolina Constitution of 1895 placed control of local government affairs largely with the General Assembly. Most notably, Article X, § 6 of the 1895 Constitution allowed the General Assembly to grant counties the power to levy taxes only for specific listed purposes such as roads, prisons, education, courts, salaries of county officials, and other "ordinary county purposes."  The intent of this provision was to "halt county and township taxing and spending except that which was unequivocally for traditional local government purposes."  Underwood, *The Constitution of* South Carolina: Vol. II: The Journey Toward Local Self–Government at 83 (1989). As a result, this Court strictly interpreted what constituted an "ordinary county purpose" for which state government could lawfully permit counties to levy taxes or issue bonds.  *See, e.g., Leonard v. Talbert,* 225 S.C. 559, 83 S.E.2d 201 (1954) (act creating physical education commission and providing funding for sports fields for Richland County schools had neither educational nor "ordinary county purpose" within the meaning of Article X, § 6).  In the same vein, because modern waste

---

1.  Cornelius also contended that County intended to fund water projects. The circuit court held County lacked authority to build or operate a water system, a holding not challenged on appeal.

treatment practices were not known in 1895 and could not therefore have been an "ordinary" county purpose, the Court construed Article X, § 6 as prohibiting counties from expending tax revenues or bond funds to construct or operate sewerage systems. *Doran v. Robertson,* 203 S.C. 434, 27 S.E.2d 714 (1943). In 1973, the Constitution was amended and Article VIII, § 16 was added as part of the quest for Home Rule. This Constitutional provision permits a county, upon majority vote of its electors, "to acquire by initial construction or purchase" and to ."operate . . . sewer systems. . . ." As noted in *Knight v. Salisbury,* 262 S.C. 565, 574, 206 S.E.2d 875, 879 (1974), the provision removed the obstacles presented by Article X, § 6 and *Doran* and "expressly empowers counties to act" in establishing sewer systems.

Oconee County maintains that the purpose of Article VIII, § 16 is to allow voters to decide whether a county should be permitted to initially engage in wastewater treatment functions. County argues that since the Constitution refers to **"initial** construction or purchase," and since the Referendum referred only to **"a** wastewater treatment facility," the Referendum only limits the funding sources County could use to construct the first facility and does not hinder County from using tax monies or other forms of financing to fund subsequent expansions of the facility or additional sewer system projects. According to County, once the 1976 Referendum passed, County was free to expand its sewer system and service, and to fund that expansion in any way it chose. We disagree.

█ As a general rule, once voters have approved a Referendum, a county may expand its sewerage system without further authorization from the electors. *See Johnson v. Piedmont Mun. Power Agency,* 277 S.C. 345, 287 S.E.2d 476 (1982). The question remains, however, whether such an expansion is subject to the express terms and limitations of the Referendum.

█ We hold that a county seeking to expand a utility cannot ignore the express terms of the Article VIII, § 16 referendum that initially authorized the county to own and operate the utility. As Justice Littlejohn observed in *Johnson:*

The people, speaking through a constitution, endeavor to protect their life, liberty and property by prescribing and limiting the powers of the government. This acts as a bulwark of liberty for the protection of private rights. The Constitution is the instrument of the people to protect themselves against the rule of man as contrasted with the rule of law.

The power of government to demand money from its people by way of taxation, or otherwise, is equivalent to the power to destroy.

277 S.C. at 356, 287 S.E.2d at 482 (Littlejohn, A.J., dissenting).

The Constitution forbids a county from owning and operating a sewer system unless county electors have approved the county's assumption of this function by referendum. While nothing in Article VIII, § 16 requires that the referendum be phrased to restrict the sources of funding a county may use for a sewer system, here Oconee County chose to include such a restriction in the referendum it presented to the voters. Accordingly, the voters of Oconee County approved the referendum, but only on the condition that specific, non-tax based financing be used to construct, operate, and maintain the sewer system. To now permit the County to use the fact of a favorable vote as a license to ignore the express terms of that referendum and deploy its general taxing power to finance expansion of the system would subvert the popular will and deprive "the people [of the right] to protect themselves against the rule of man...."

█ County alternatively contends that a constitutional referendum is merely one of several methods by which a county may be authorized to provide sewer services. County claims S.C.Code Ann. § 44–55–1410(A) (2002) provides an independent basis upon which a county may opt to provide sewer services using *ad valorem* tax funds. We disagree. This statute was enacted in 1975 pursuant to the Constitution's directive to the General Assembly to implement Home Rule, see *Hospitality Ass'n of South Carolina v. County of Charleston*, 320 S.C. 219, 464 S.E.2d 113 (1995), and provides the governmental framework for a county to operate a sewer system that has been initially authorized by constitutional

referendum. *Cf. Murphree v. Mottel,* 267 S.C. 80, 226 S.E.2d 36 (1976) (favorable Article VIII, § 16 referendum is prerequisite for county operation of water or sewer facilities). The statute does not permit a county to operate wastewater treatment facilities in the absence of a constitutional referendum.[2]

■ County next contends that it can enlarge its sewer system utilizing *ad valorem* tax monies, citing S.C. Const. art. VIII, § 7, which states, "The General Assembly shall provide by general law for ... powers ... of counties, including the power to tax...." This general taxing provision does not prevail over the specific requirement of the constitutional referendum mandated by Article VIII, § 16. *See* S.C. Const. art. I, § 23 ("The provisions of the Constitution shall be taken, deemed, and construed to be mandatory and prohibitory, and not merely directory ...").

■ Finally, County points to its general authority to expend tax revenues in aid of economic development, including sewer services, as a separate basis upon which it may expand sewer services independent of the Referendum. We disagree. A county's general taxing authority does not trump the constitutional requirement that electors approve the operation of sewer services by referendum. *Cf. Rutherford v. Rutherford,* 307 S.C. 199, 414 S.E.2d 157 (1992) (general constitutional provision does not overrule specific constitutional clause).

We therefore affirm the circuit court order holding that County is bound by the terms of the Referendum both geographically[3] and financially in expanding its wastewater treatment services and facilities.

### B. *Attorneys' Fees*

■ Cornelius was awarded $9,450 attorneys' fees pursuant to S.C.Code Ann. § 15–77–300 (2005). County argues it acted

---

2. Indeed, the last sentence of section 44–55–1410(A) plainly provides that "[n]othing herein contained is intended to authorize the levy of taxes."

3. Nothing in the Referendum or the circuit court order, however, limits County's authority to contract with other public or private entities to provide sewer services. *See* S.C.Code Ann. § 44–55–1410(D); § 6–15–20.

with "substantial justification" because there are no preexisting judicial precedents on these issues, merely attorney general opinions, and that Cornelius was not a "prevailing party" in that this was merely a declaratory judgment action to define rights, duties, and obligations, and that therefore the fee award was improper. We affirm the award.

In order to make an award under § 15–77–300, the trial court must find: 1) the party seeking the award was the prevailing party; 2) the state agency acted without substantial justification; and 3) that no special circumstances make an award unjust. *Jasper County Bd. of Educ. v. Jasper County Grand Jury*, 303 S.C. 49, 398 S.E.2d 498 (1990). The trial court's decision to award or deny fees under § 15–77–300 will not be disturbed on appeal absent an abuse of discretion. *Id.*

Taking County's arguments in reverse order, this Court has never held that § 15–77–300 is inapplicable to declaratory judgment actions. In fact, the Court has decided numerous declaratory judgment appeals where fees were sought pursuant to the statute. *See, e.g., City of Charleston v. Masi*, 362 S.C. 505, 609 S.E.2d 301 (2005) (no prevailing party under statute where declaratory judgment action dismissed as moot); *Eargle v. Horry County*, 344 S.C. 449, 545 S.E.2d 276 (2001) (remanding declaratory judgment action for determination of statutory award); *S.C. Tax Comm'n v. United Oil Marketers, Inc.*, 306 S.C. 384, 412 S.E.2d 402 (1991) (no abuse of discretion in denying award to non-prevailing party in declaratory judgment action). While the statute specifically exempts certain types of suits, declaratory judgments are not among them. A party whose position prevails in a declaratory judgment dispute with a state agency may be awarded fees under § 15–77–300.

The trial court can award attorneys' fees under the statute only if it finds the State "agency acted without substantial justification in pressing its claim...." § 15–77–300(1). An agency acts with "substantial justification" within the meaning of the statute when its position has a "reasonable basis in law and fact." *McDowell v. SCDSS*, 304 S.C. 539, 542, 405 S.E.2d 830, 832 (1991). Contrary to County's contention, the fact that novel issues were raised does not mean County was substantially justified in opposing Cornelius. Declaratory

judgment actions by their very nature often present novel questions. *See, e.g. Eargle, supra* (authority of county administrator to suspend elected official's employees); *United Oil Marketers, supra* (constitutionality of license tax incentive statute for gas/ethanol blend); *Heath v. County of Aiken,* 302 S.C. 178, 394 S.E.2d 709 (1990) (to define relationship between sheriff's office and county council). Moreover, County cited no viable authority supporting its position that it was no longer bound by the Referendum's terms. We agree with the circuit court that County acted without substantial justification, and no special circumstances render the attorneys' fee award unjust.

We find the circuit court properly exercised its discretion in awarding Cornelius fees under § 15–77–300. Jasper County, *supra.*

## CONCLUSION

The circuit court orders holding County is bound by the terms of the Referendum and awarding Cornelius attorneys' fees are

**AFFIRMED.**

TOAL, C.J., MOORE, WALLER and BURNETT, JJ., concur.