# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Cynthia L. McNaughton, Respondent,

v.

Charleston Charter School for Math and Science, Inc., Appellant.

Appellate Case No. 2012-212451

---

Appeal From Charleston County
Kristi Lea Harrington, Circuit Court Judge

---

Opinion No. 27490
Heard September 24, 2014 – Filed January 28, 2015

---

## AFFIRMED

---

Thomas Bailey Smith, of Smith Law Firm, P.A., of Mount Pleasant, for Appellant.

Nancy Bloodgood and Lucy Clark Sanders, both of Foster Law Firm, L.L.C., of Charleston, for Respondent.

---

**CHIEF JUSTICE TOAL:** The Charleston Charter School for Math and Science (Appellant) appeals the trial court's decisions denying Appellant's motions for a directed verdict and judgment notwithstanding the verdict (JNOV) on McNaughton's wrongful termination/breach of contract claim; permitting the jury to award special damages; and granting attorney's fees to McNaughton under section 15-77-300 of the South Carolina Code. We affirm.

### FACTS/PROCEDURAL BACKGROUND

In late 2008, Cynthia McNaughton, who was in her early to mid 50's at the time, was accepted into the South Carolina Department of Education's Program of Alternative Certification for Educators (PACE program), which enables individuals who earned a college degree—but did not complete a traditional teacher preparation program—to become certified South Carolina public school teachers.[1]  Before beginning the PACE program, McNaughton worked as a graphic designer and previously taught art and theater design in Florida for seven years. When McNaughton began the PACE program, she hoped to make teaching her "exit career," and to work as a certified teacher for eleven or twelve years, at which point she planned to retire.

In August 2010, Appellant's principal (the principal) hired McNaughton to teach 6th, 7th, and 8th grade art, along with the yearbook class.  When she was hired, Appellant knew that McNaughton was participating in the PACE program, and that her completion of the program was contingent upon her fulfillment of further requirements, including the completion of an induction teaching year. McNaughton signed an employment agreement, which stated that McNaughton "agree[d] to be a full-time teacher at Charleston Charter School for Math and Science for the school year 2010–2011."[2]  The employment agreement further stated that it was "contingent on funding and enrollment" (the contingency clause). A "Wage Payment Notice" indicated that Appellant would pay McNaughton a yearly salary of $34,040.[3]

---

[1] PACE is an intensive, selective program, and typically takes three years to complete after acceptance into the program.  *PACE Overview*, S.C. State Dep't of Educ., http://ed.sc.gov/agency/se/Educator-Services/Alt-Licensure/pace/PACEOverview.cfm (last updated Oct. 16, 2014).  Individuals in the PACE program teach for a year as an "induction teacher," as well as complete other courses and requirements.  If someone completing the PACE program stops the program (i.e., loses her teaching job) before completing the program, she "*may* be allowed to reapply" and possibly start the program over from the beginning. *PACE FAQ*, S.C. State Dep't of Educ., http://ed.sc.gov/agency/se/Educator-Services/Alt-Licensure/pace/PACEFAQ.cfm (last updated April 16, 2014) (emphasis added).

[2] Appellant admitted that by virtue of the employment agreement, McNaughton was not an at-will employee.

[3] McNaughton would have earned approximately $35,000 her first year as a certified teacher, and $36,000 her second year.

McNaughton received positive feedback from her students and their parents. According to the principal, McNaughton was a talented art teacher, especially when it came to designing cross-curricular lessons. Neither the principal nor any other faculty member experienced any problems with McNaughton's performance as a teacher, and McNaughton was never disciplined for any matter.

However, on December 1, 2010—in the middle of the school year—the principal informed McNaughton that Appellant was terminating her employment. The principal told McNaughton that Appellant needed to use the funds designated for McNaughton's salary to hire and pay a new math teacher because some of the students had performed poorly on a recent math achievement test.[4] McNaughton was surprised to learn of her termination and immediately became concerned that she would be unable to find another job as an induction teacher, especially in the middle of the school year.

At trial, the principal testified in detail about Appellant's budget and funding decisions. For each school year, Appellant projects an annual budget, then reconciles it on a monthly basis. According to the principal, in November 2010, she told Appellant's board of directors (the board) that Appellant was in a solid financial position. Soon after this statement, in December 2010, the principal made the decision to hire the new math teacher and terminate McNaughton's employment. Despite the fact that the principal asked the board for approval to hire new social studies and special education teachers in November 2010, for which the board approved a $72,000 budget change, the board minutes do not indicate that she consulted the board on her decision regarding McNaughton's employment or the creation of the new teaching position.[5]

---

[4] Because of these results, the math department chair approached the principal in October, and they devised a plan to hire an additional math teacher in order to provide the students with twice the amount of math instruction that they had previously received. The plan involved placing the students in a computer-based math remediation class instead of art class for the spring semester.

[5] The principal testified that hiring and firing decisions are the principal's responsibility and do not require the board's approval. Although Appellant's charter states that the board's responsibilities include employing and contracting with teachers, the principal maintained that she was responsible for carrying out

The principal conceded that when McNaughton was terminated, there was funding available to pay McNaughton's salary, but that the funding was instead used to hire and pay the new math teacher. In fact, on cross-examination of the principal at trial, McNaughton's attorney pointed out multiple lines in the budget that had not been used as of November 2010, and ultimately were never used for their intended purposes. For example, in November 2010, Appellant had $25,054 designated for "teacher salary supplement" and $18,000 for "administrative staff services"—funds which were untouched at that time, and remain unused for their designated purposes throughout the school year.

Because McNaughton felt her termination was "unjust," she reviewed Appellant's grievance and termination policy and began the grievance procedure.[6] When McNaughton met with the principal in mid-January 2011 as the first step of the grievance procedure, the principal informed McNaughton for the first time that she had been "laid off." According to McNaughton, the principal also told her that Appellant had the legal right to move funding around as it chose, and that because McNaughton was an at-will employee, the principal "could do whatever she wanted." McNaughton testified that her grievance procedure ended when the chairwoman of the board notified McNaughton that she had no "standing" to continue the grievance procedure.

The principal wrote McNaughton a letter of reference to assist with McNaughton's job search. However, McNaughton was only able to find a job teaching two days a week, which did not grant her enough teaching hours to remain in the PACE program. McNaughton applied for jobs in graphic design as well as entry level jobs, but was unsuccessful. McNaughton also applied for and received unemployment benefits.

---

the charter, and the decision to hire the new math teacher and to terminate McNaughton's employment was in the best interests of the students.

[6] After reading Appellant's grievance and termination policy and learning more about Appellant's finances, McNaughton questioned the circumstances of her termination. Despite calling McNaughton's termination a "lay-off" and writing a letter of reference for her, the principal never offered McNaughton other available positions, even when Appellant hired a new art teacher for the 2011–2012 school year.

McNaughton testified that as a result of losing her job, she was forced to purchase COBRA health insurance for $250 per month (until she could no longer afford it and discontinued it), withdraw the available funds from her state retirement fund, and defer her student loans (which resulted in $2,500 additional interest). In addition, McNaughton testified that she was unable to refinance her home, and that her bank foreclosed upon her mortgage.

McNaughton filed a complaint against Appellant, alleging four causes of action: wrongful termination/breach of contract, breach of contract accompanied by a fraudulent act, third party beneficiary breach of contract, and grossly negligent supervision. In her complaint, McNaughton requested actual and special damages, costs, and attorney's fees pursuant to section 15-77-300 of the South Carolina Code.[7]

On June 4 and 5, 2012, a jury trial was held. After McNaughton presented her case, Appellant made a motion for a directed verdict on all causes of action, as well as McNaughton's entitlement to attorney's fees and damages. The trial court granted Appellant's motion on the breach of contract accompanied by a fraudulent act, third party breach of contract, and grossly negligent supervision claims. The court denied the motion as to the wrongful termination/breach of contract claim, attorney's fees, and damages. At the close of all of the evidence, Appellant again moved for a directed verdict on these issues, which the court denied.

The jury returned a verdict in favor of McNaughton on her breach of contract claim, finding $20,623 in actual damages and $74,112 in special damages.[8] After the jury verdict was announced, Appellant moved for JNOV

---

[7] S.C. Code Ann. § 15-77-300 (2005).

[8] In her closing argument, McNaughton's attorney argued that McNaughton suffered damages of $17,000 in lost wages for the second semester of the 2010–2011 school year and $1,000, which would have been contributed to her retirement account if she had continued working for the remainder of the school year. The attorney also pointed out to the jury that as a result of her termination, McNaughton paid for COBRA health insurance after she lost her health insurance, and her home was foreclosed upon. In addition, the attorney argued that McNaughton had suffered career damages. She pointed out that McNaughton could have earned approximately $408,000 over the twelve years she planned to

under Rule 50(b), SCRCP, and a new trial under Rule 59(a), SCRCP, which the court denied.  McNaughton filed a petition for attorney's fees.

The trial court held a separate hearing on the issue of attorney's fees and awarded $37,894 in attorney's fees pursuant to section 15-77-300.  In its order awarding attorney's fees, the trial court addressed and considered the factors of section 15-77-300 in detail.

Appellant appealed to the court of appeals.  This Court certified the appeal pursuant to Rule 204(b), SCACR.

## ISSUES

I.      Whether the trial court erred in denying Appellant's motions for a directed verdict and JNOV as to McNaughton's wrongful termination/breach of contract claim?

II.     Whether the trial court erred in charging and allowing the jury to award McNaughton special damages for her wrongful termination/breach of contract claim?

III.    Whether the trial court erred in awarding attorney's fees pursuant to section 15-77-300 of the South Carolina Code?

## LAW/ANALYSIS

### I.      *Wrongful Termination/Breach of Contract*

Appellant argues that the trial court erred in denying its motions for a directed verdict and JNOV on McNaughton's breach of contract claim because Appellant was entitled to terminate McNaughton's employment pursuant to the contingency clause in her employment agreement.  We disagree.

In ruling on a motion for a directed verdict or JNOV, the trial court must view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motions.  *Sabb v. S.C. State Univ.*,

---

teach as a certified teacher, while she would have earned approximately $192,000 at a minimum wage job—a difference of $216,000.

350 S.C. 416, 427, 567 S.E.2d 231, 236 (2002). The trial court must deny either motion when the evidence yields more than one inference or its inference is in doubt. *Id.* This Court will reverse the trial court only when there is no evidence to support the trial court's ruling. *Id.* A jury's factual finding will not be disturbed unless a review of the record discloses that there is no evidence which reasonably supports the jury's findings. *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 85, 221 S.E.2d 773, 775 (1976) (citing *Odom v. Weathersbee*, 225 S.C. 253, 260, 81 S.E.2d 788, 792 (1954)).

Appellant argues that "unless there was ongoing funding for [McNaughton's] position then the [employment agreement] entitled Appellant to end her employment without notice and before the school year ended." Therefore, in reviewing the trial court's rulings on the directed verdict and JNOV motions, we must determine whether there was sufficient evidence to suggest that—given the contingency clause—Appellant breached McNaughton's employment agreement because there was funding actually available for her position at the time of her termination.

The analysis of this issue hinges on whether the principal's decision to reallocate the funding initially designated for McNaughton's salary falls within the confines of the contingency clause, which states that McNaughton's employment was "contingent on funding and enrollment." Appellant contends that "the only evidence in this case shows that there was not even an extra penny available to fund [McNaughton's] position as a teacher." Not only is this contrary to the principal's statement at trial that there was indeed funding available to pay McNaughton's salary at the time of her termination, there is also other evidence in the record to support McNaughton's position.

For example, there was funding available in other line items of the budget, such as "teacher salary supplement" and "administrative staff services." Further, despite the principal's testimony that "there was no play" in the line item for teachers' salaries, the record makes it clear that it was not unusual for the principal to ask the board for approval to move around funding in the budget—as evidenced by the board's decision in November 2010 to approve the use of $72,000 to hire new teachers.

Therefore, because there is evidence to support the jury's finding that Appellant breached McNaughton's employment agreement, we hold that the trial court properly denied Appellant's directed verdict and JNOV motions.

## II. *Special Damages*

Special damages, also known as consequential damages, are actual damages. *Capps v. Watts*, 271 S.C. 276, 281, 246 S.E.2d 606, 609 (1978); *see Fields v. Yarborough Ford, Inc.*, 307 S.C. 207, 211, 414 S.E.2d 164, 166 (1992). Unlike general damages, which must necessarily result from the wrongful act upon which liability is based and are implied by the law, special damages are damages for losses that are the natural and proximate—but not the necessary—result of the injury, and may be recovered only when sufficiently stated and claimed. *Sheek v. Lee*, 289 S.C. 327, 328–29, 345 S.E.2d 496, 497 (1986) (citations omitted). Therefore, where a plaintiff seeks special damages in addition to general damages, he must plead and prove the special damages to avoid surprise. *Kline Iron & Steel Co. v. Superior Trucking Co.*, 261 S.C. 542, 547, 201 S.E.2d 388, 390 (1973).

If the plaintiff's proof is speculative, uncertain, or otherwise insufficient to permit calculation of his special damages, his claim should be denied. *Jackson v. Midlands Human Res. Ctr.*, 296 S.C. 526, 528, 374 S.E.2d 505, 506 (Ct. App. 1988). However, special damages "'occasioned by breach of contract *may* be recovered when such damages may reasonably be supposed to have been within the contemplation of the parties at the time the contract was made.'" *Stern & Stern Assocs. v. Timmons*, 310 S.C. 250, 252, 423 S.E.2d 124, 126 (1992) (emphasis added) (quoting *Goodwin v. Hilton Head Co.*, 273 S.C. 758, 761, 259 S.E.2d 611, 613 (1979)). Although "the defendant need not foresee the exactly dollar amount of the injury, the defendant must know or have reason to know the special circumstance so as to be able to judge the degree of probability that damage will result . . . ." *Id.* (quoting 5 Arthur Linton Corbin, *Corbin on Contracts* § 1014 (1964)).

In other words, special damages may be recovered in a contract action if "the defendant had notice of the circumstances from which they might reasonably be expected to result at the time the parties entered into the contract, as the effect of allowing such damages would be to add to the terms of the contract another element of damages, not contemplated by the parties." *Moore v. Atl. Coast Line R.R. Co.*, 85 S.C. 19, 19, 67 S.E. 11, 12 (1910); *see also Timmons*, 310 S.C. at 251, 423 S.E.2d at 125 ("The party claiming special damages must show that the defendant was clearly warned of the probable existence of unusual circumstances or that because of the defendant's own education, training, or information, the defendant had 'reason to foresee the probable existence of such circumstances.'"

(quoting 5 Arthur Linton Corbin, *Corbin on Contracts* § 1011 (1964))).

A trial judge has considerable discretion in determining the amount of actual damages. *Santoro v. Schulthess*, 384 S.C. 250, 267, 681 S.E.2d 897, 906 (Ct. App. 2009) (citing *Austin v. Specialty Transp. Servs., Inc.,* 358 S.C. 298, 310–11, 594 S.E.2d 867, 873 (Ct. App. 2004)). Based on this discretion afforded to trial judges, review on appeal is limited to the correction of errors of law. *Id.* Accordingly, this Court's task in reviewing a damages award is not to weigh the evidence, but to decide if any evidence exists to support the damages award. *Id.*

Appellant first argues that the trial court erred in allowing special damages because under *Shivers v. John H. Harland Co.*, 310 S.C. 217, 423 S.E.2d 105 (1992), McNaughton was limited to recovering damages for the term of her contract—her unpaid salary for the remainder of the 2010–2011 school year. In *Shivers*, we examined whether an employee's recovery for wrongful breach of an employment contract was limited to the amount of pay and other benefits he would have received during the notice period provided for in his contract.[9] *Id.* at 219, 423 S.E.2d at 106.

---

[9] There, the employee's employment contract required at least fifteen days written notice of either party's termination of the contract. *Shivers*, 310 S.C. at 219, 423 S.E.2d at 106. The employer discharged the employee for cause under another provision of the contract without notice, and a jury found the discharge for cause was wrongful. *Id.* The employer moved to limit the employee's damages as a matter of law to the amount of pay he would have received under the fifteen day notice provision. *Id.*

Ultimately, we concluded that the trial court was correct in limiting the employee's damages to the amount of pay and benefits he would have received during the notice period because those damages placed him in as good a position as he would have been had the employer performed the contract. *Id.* at 221, 423 S.E.2d at 108. In coming to this conclusion, we outlined the purpose of contractual damages:

> When an employee[] is wrongfully discharged under a contract for a definite term, the measure of damages generally is the wages for the unexpired portion of the term. This measure of damages allows an employee to receive the benefit of the bargain by putting him in as good a position as he would have been had the contract been performed.

*Id.* at 220, 423 S.E.2d at 107 (internal citations omitted).

Notwithstanding this statement on contract damages, *Shivers* addressed a narrow issue involving a notice provision, and therefore does not limit McNaughton's recovery to the portion of her salary she would have received from December 2010 until the end of the 2010–2011 school year. Accordingly, we hold that McNaughton was entitled to recover the loss she actually suffered as a result of the breach of her employment agreement. *See Shivers*, 310 S.C. at 220, 423 S.E.2d at 107; *Drews Co. v. Ledwith-Wolfe Assocs., Inc.*, 296 S.C. 207, 210, 371 S.E.2d 532, 534 (1988) (stating that the proper measure of compensation for a breach of contract "is the loss actually suffered by the contractee as the result of the breach" (quoting *S.C. Fin. Corp. v. W. Side Fin. Co.,* 236 S.C. 109, 122, 113 S.E.2d 329, 335 (1960))).

Appellant further argues that special damages were never contemplated because there is no evidence that Appellant would have employed McNaughton for more than one school year. We disagree, and find this argument irrelevant to the issue at hand because McNaughton did not contend that she is entitled to damages based on the extension of her employment agreement beyond one year. Instead, in arguing that she is entitled to special damages, she relies on her status as an induction teacher in the PACE program when she was terminated, and the fact that she planned to teach *as a certified teacher* in South Carolina for eleven to twelve years. Based upon the principal's testimony and the record, there is no doubt that at the time the parties entered into the employment agreement, Appellant was aware of McNaughton's involvement in the PACE program, and thus was "clearly

warned" of the repercussions of McNaughton losing her job as an induction teacher. *See Timmons*, 310 S.C. at 252, 423 S.E.2d at 126; *Moore*, 85 S.C. at 19, 67 S.E. at 12.

Moreover, McNaughton presented evidence of her status in the PACE program, her inability to become a certified teacher through the PACE program after her employment was terminated, and the other financial consequences she suffered. Had Appellant not terminated McNaughton's employment, she most likely would have completed the PACE program and become a certified teacher. The damages McNaughton suffered as a result of the special circumstance of losing her position in the PACE program after Appellant terminated her was clearly within the contemplation of Appellant, as required by *Timmons*.[10]

Accordingly, we find that McNaughton presented evidence to support the jury's special damages award, and that the trial court did not err in charging and allowing the jury to award McNaughton special damages for her breach of contract claim.

### III. *Attorney's Fees under Section 15-77-300*

Appellant argues the trial court erred in awarding attorney's fees under section 15-77-300 of the South Carolina Code.

Section 15-77-300 provides, in relevant part:

(A) In any civil action brought by the State, any political subdivision of the State or **any party who is contesting state action** . . . the court may allow the prevailing party to recover reasonable attorney's fees to be taxed as court costs against the appropriate agency if:

---

[10] The dissent cites *Timmons*, apparently for the proposition that special damages are not appropriate here. The dissent's view is at odds with *Timmons*, however, as *Timmons* permitted a special damages award for the same reason we allow them here—because the record indicates that Appellant was aware of the damages that would be occasioned by a breach of contract. *See* 310 S.C. at 253, 423 S.E.2d at 253 (finding special damages appropriate because the "record below indicates that [the defendant] was aware of the need for fill dirt and aware of the probable damage that would result from a time delay prior to her signing the contract").

> (1) the court finds that the agency acted without substantial justification in pressing its claim against the party; and
>
> (2) the court finds that there are no special circumstances that would make the award of attorney's fees unjust.

(Emphasis added).

"The decision to award or deny attorney's fees under the state action statute will not be disturbed on appeal absent an abuse of discretion by the trial court in considering the applicable factors set forth by the statute." *Layman v. State*, 376 S.C. 434, 444, 658 S.E.2d 320, 325 (2008) (citation omitted). "An abuse of discretion occurs when the conclusions of the trial court are either controlled by an error of law or are based on unsupported factual conclusions." *Id.* (citing *Zabinski v. Bright Acres Assocs.,* 346 S.C. 580, 601, 553 S.E.2d 110, 121 (2001)).

## A. State Action

Appellant argues that McNaughton's request for attorney's fees does not satisfy the factors of section 15-77-300 for three reasons. First, Appellant contends that as a charter school, it is not a state actor, and thus, there has been no "state action" to trigger application of the statute. We disagree.

Section 59-40-40(2)(a) of the South Carolina Code provides that a charter school "is, for purposes of state law and the state constitution, considered a public school and part of the South Carolina Public Charter School District, the local school district in which it is located, or is sponsored by a public or independent institution of higher learning." S.C. Code Ann. § 59-40-40(2)(a) (Supp. 2013). Section 59-17-10 of the South Carolina Code provides, in part, that "[e]very school district is and shall be a body politic and corporate . . . of . . . the State of South Carolina." S.C. Code Ann. 59-17-10 (Supp. 2013); *Camp v. Sarratt*, 291 S.C. 480, 481, 354 S.E.2d 390, 391 (1987). In its order awarding attorney's fees, the trial court found that under section 59-40-40(2), when read together with sections 59-40-40(1)[11] and 59-40-50,[12] a charter school is considered a state entity and is

---

[11] Section 59-40-40(1) provides:
> A 'charter school' means a public, nonreligious, nonhome-based, nonprofit corporation forming a school that operates by sponsorship

subject to the provisions of section 15-77-300. We agree with the trial court's conclusion.

At trial, the principal testified that Appellant is funded by revenue received from the Charleston County School District. In addition, Appellant conceded that it is part of the public school system. Nevertheless, in its brief, Appellant set forth a list of reasons why it is not a state actor subject to section 15-77-300. For example, Appellant contends that as an "independent entity [which] is not supervised by anyone—including the state or the school district," it "stands alone" and is governed only by its board of directors. Further, Appellant asserts that it "does not have the authority to perform governmental functions such as taxing citizens to raise revenue or exercising the power of eminent domain," but that instead, "it is simply a non-profit corporation formed for the benefit of the public."

Contrary to Appellant's suggestion, state actors need not perform all possible governmental functions. Rather, Appellant is a state actor because it is classified

---

of a public school district, the South Carolina Public Charter School District, or a public or independent institution of higher learning, but is accountable to the board of trustees, or in the case of technical colleges, the area commission, of the sponsor which grants its charter. Nothing in this chapter prohibits charter schools from offering virtual services pursuant to state law and subsequent regulations defining virtual schools.

[12] Section 59-40-50(B)(4) states that a charter school must:

be considered a school district for purposes of tort liability under South Carolina law, except that the tort immunity does not include acts of intentional or wilful racial discrimination by the governing body or employees of the charter school. Employees of charter schools must be relieved of personal liability for any tort or contract related to their school to the same extent that employees of traditional public schools in their school district or, in the case of the South Carolina Public Charter School District or a public or independent institution of higher learning sponsor, the local school district in which the charter school is located are relieved . . . .

S.C. Code Ann. § 59-40-50(B)(4) (Supp. 2013).

as a public school; is funded by state money; and created by virtue of state law in furtherance of the state's duty to provide public education pursuant to Article XI, section 3 of the South Carolina Constitution. *See* S.C. Const. art. XI, § 3; S.C. Code Ann. § 59-40-40(1). Charter schools such as Appellant would cease to exist but for the public funding which they receive. Accordingly, we hold that charter schools organized under Title 59, Chapter 40 of the South Carolina Code may be subject to attorney's fees awarded for "state action" under section 15-77-300.

## B. Substantial Justification

Section 15-77-300(B)(1) requires that a court awarding attorney's fees under that section must find that the state actor "acted without substantial justification in pressing its claim" against the party requesting attorney's fees. Appellant argues that it did not lack substantial justification in defending McNaughton's breach of contract claim, and therefore, the trial court erred in awarding McNaughton attorney's fees.

To find that a party acted without substantial justification in pressing its claim, the party must have been "justified to a degree that could satisfy a reasonable person." *Heath v. Cnty. of Aiken*, 302 S.C. 178, 183, 394 S.E.2d 709, 712 (1990). Action supported by substantial justification "has a reasonable basis in law and fact." *McDowell v. S.C. Dept. of Soc. Servs.*, 304 S.C. 539, 542, 405 S.E.2d 830, 832 (1991). Also relevant to the substantial justification consideration "is the outcome of the matter eventually litigated." *Layman*, 376 S.C. at 448, 658 S.E.2d at 327; *Heath*, 302 S.C. at 184, 394 S.E.2d at 712.

In its order, the trial court concluded that "[a]fter listening to the testimony presented during the case, the arguments of counsel, the evidence presented, and considering the jury's findings," Appellant was not substantially justified in pursuing its defense against McNaughton "as there was no reasonable basis in law or fact on which to defend [McNaughton's] breach of contract claim." We find no abuse of discretion in the trial court's finding that Appellant lacked substantial

justification under section 15-77-300(B)(1). *See Layman*, 376 S.C. at 444, 658 at 325.

## C. Special Circumstances

Appellant also argues that special circumstances exist rendering the award of attorney's fees unjust. *See* S.C. Code Ann. § 15-77-300(B)(2). In particular, Appellant relies on the fact that the principal solicited legal advice before terminating McNaughton's employment to ensure that the existence of the contingency clause in her employment agreement did not have legal significance. Appellant also cites the contingency clause itself, its students' math scores, and the letter of recommendation provided to McNaughton as special circumstances making attorney's fees unjust. Appellant contends that because its decision to terminate McNaughton's employment was made in good faith and in pursuit of its students' best interests, the trial court should not have awarded attorney's fees.

The trial court rejected these arguments, and found that no special circumstances existed to make an award of attorney's fees unjust in this case. We find the trial court did not abuse its discretion in making this finding, but instead, carefully considered and applied each of the applicable factors in the statute. *See Layman*, 376 S.C. at 444, 658 S.E.2d at 325. Accordingly, we affirm the trial court's decision to award McNaughton's attorney's fees under section 15-77-300.

## D. Section 59-40-50

Finally, Appellant contends that section 59-40-50(A) of the South Carolina Code exempts charter schools from liability under section 15-77-300, and because Appellant did not elect to be covered by the statute, the trial court erred in awarding attorney's fees. We disagree.

Section 59-40-50(A) provides:

(A) Except as otherwise provided in this chapter, a charter school is exempt from all provisions of law and regulations applicable to a public school, a school board, or a district, although a charter school may elect to comply with one or more of these provisions of law or regulations.

S.C. Code Ann. § 59-40-50(A) (Supp. 2013). According to Appellant, because

section 15-77-300 is not specifically listed in Section 59, Chapter 40 as one of the laws or regulations that applies to charter schools, Appellant cannot be held liable for attorney's fees under that section. We disagree.

The purpose of 59-40-50(A) is to distinguish between charter schools and other public schools, school boards, or school districts by providing charter schools with more flexibility in their operations. While section 15-77-300 is generally applicable to public schools, school boards, or districts, the provision also covers other state actors and "political subdivisions of the State." In other words, the provision was not enacted especially for public schools, school boards, or school districts, and is not a provision that a charter school may opt out of merely because of its charter school status as opposed to a traditional public school. Therefore, the exemption in section 59-40-50(A) does not cover section 15-77-300, and we hold that a court may find a charter school liable for attorney's fees under section 15-77-300.

CONCLUSION

For the foregoing reasons, the trial court's decision is

**AFFIRMED.**

**BEATTY, KITTREDGE and HEARN, JJ., concur. PLEICONES, J., concurring in part and dissenting in part in a separate opinion.**

**JUSTICE PLEICONES:**  I concur in part and dissent in part.  I conclude that there is some slight evidence to support the trial court's denial of appellant's motions for directed verdict and JNOV on McNaughton's breach of contract claim, and therefore concur in the majority's affirmance of this issue.  I dissent from those portions of the opinion which uphold the special damages award and the attorneys' fee award.

In order to recover special damages in this breach of contract suit, McNaughton was required to prove that appellant

> [w]as clearly warned of the probable existence of unusual circumstances or that because of the [appellant's] own education, training, or information, the [appellant] had "reason to foresee the probable existence of such circumstances."

*Stern & Stern Assoc. v. Timmons*, 310 S.C. 250, 423 S.E.2d 124 (1992) (internal citation omitted).  In my opinion, appellant's status as an induction teacher in the PACE program pursuant to a one-year contract was not sufficient to render appellant liable for McNaughton's losses beyond her lost salary and benefits for the school year 2010-2011.  *E.g.*, *Shivers v. John H. Harland Co., Inc.*, 310 S.C. 217, 423 S.E.2d 105 (1992) (proper measure of damages in breach of employment case).  There is simply no evidence that McNaughton met the requirements of *Timmons*, and the rank speculation concerning her potential had she successfully completed the PACE program is not a substitute for such proof.

I also dissent from the majority's affirmance of the attorneys' fees awarded McNaughton pursuant to S.C. Code Ann. § 15-77-300 (Supp. 2013).  Assuming that appellant is a state actor within the meaning of this statute, appellant's decision to put McNaughton to her proof here was, in my opinion, substantially justified, particularly in light of the trial court's direction of a verdict in appellant's favor on three of McNaughton's causes of action.  *See e.g. Cornelius v. Oconee Cnty.*, 369 S.C. 531, 633 S.E.2d 492 (2006) (state acts with substantial justification when its position has a "reasonable basis in law and fact.").

For the reasons given above, I concur in part and dissent in part.