**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Supreme Court**

Shem Creek Development Group, LLC, Respondent,

v.

The Town of Mount Pleasant, South Carolina, Petitioner.

Appellate Case No. 2024-000636

———————

Appeal From Charleston County
Maite Murphy, Circuit Court Judge

———————

Memorandum Opinion No. 2025-MO-042
Heard October 21, 2025 – Filed November 12, 2025

———————

**AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS**

———————

David Guy Pagliarini, of Pagliarini Law Firm, LLC, of Daniel Island, and Andrew F. Lindemann, of Lindemann Law Firm, P.A., of Columbia, both for Petitioner.

E. Brandon Gaskins, of Moore & Van Allen, PLLC, of Charleston, for Respondent.

———————

**PER CURIAM:** To accommodate its growing population and teeming tourism, the Town of Mount Pleasant (Town) needed more public parking. Shem Creek

Development Group (SCDG) approached the Town with an idea for a new parking garage. The Town and SCDG soon entered into a contract whereby SCDG would build, own, and operate the garage, and the Town would commit to leasing 132 parking spaces in the garage. The Town's rent was $185,000 per year for the initial fifteen-year term but could be reduced based on a prorated formula keyed to the garage's yearly net profit. The rent was to be paid annually, beginning on the "Rental Commencement Date," defined as the date the certificate of occupancy was issued for the garage.

After the contract became public, the Town Council began reeling from strident citizen opposition to the project. Town officials soon paralyzed the project with a remarkable campaign of regulatory nitpicking, including manipulating the zoning code to frustrate the project plans. Rather than watch the project die the death of a thousand cuts by what appeared to be the Town's sabotage of itself and SCDG, SCDG terminated the contract, claiming the Town anticipatorily breached it. The garage had not yet been built. SCDG later sold most of its interest in the project to a third party, with whom it partnered to complete the garage.

SCDG sued the Town for breach. The trial court, after a bench trial, found the Town had breached the contract and awarded SCDG damages for the full fifteen years of rent, reduced to present value, plus prejudgment interest. The total judgment in favor of SCDG was for $2,604,316, plus an award of $298,965.22 in attorney's fees. The court of appeals affirmed in a Rule 220 opinion. *Shem Creek Dev. Grp., LLC v. Town of Mount Pleasant*, Op. No. 2024-UP-007 (S.C. Ct. App. filed Jan. 3, 2024). We granted certiorari on numerous issues.

## I.

The Town does not dispute it breached the contract and concedes, as it must, that SCDG was justified in terminating the contract. What the Town contests is what damages the contract allows SCDG to recover upon termination.

The Town's position centers on one core issue: whether section 6.01 of the contract, which sets forth the parties' agreement as to what damages SCDG is entitled to in the event of termination, allows SCDG to recover future rent. Section 6.01 provides that SCDG's "sole and exclusive remedy" for breach of contract "shall be the Rent Payments due under this Agreement." The trial court, without ruling whether this language was ambiguous, ruled SCDG could recover for future rent.

We must decide, then, whether the phrase the parties used—"the Rent Payments due under this Agreement"—is ambiguous. This is a question of law we decide afresh

on appeal. *Callawassie Island Members Club, Inc. v. Dennis*, 425 S.C. 193, 198, 821 S.E.2d 667, 669 (2018).

The phrase is ambiguous, for it carries multiple meanings. The main mischief maker in the phrase is the word "due," which has long bedeviled courts. Nearly two hundred years ago, it was observed "due" can mean more than one thing: "It is sometimes used to express the mere state of indebtment, and then is an equivalent to owed, or owing. And it is sometimes used to express the fact that the debt has become payable." *United States v. State Bank of N.C.*, 31 U.S. 29, 36 (1832); *cf. Ex parte Am. Fertilizing Co.*, 122 S.C. 171, 176–77, 115 S.E. 236, 238 (1922) (interpreting phrase "may be due" used in mortgage as sufficient to cover future advances).

As used by the parties here, the phrase "Rent Payments due under this Agreement" could mean, as the Town maintains, that the Town is liable only for the rent payments that had accrued and were payable as of the date SCDG terminated the contract. This interpretation makes sense, so the Town's argument goes, because the contract provided that the "Rental Commencement Date" would be the date the Town issued the certificate of occupancy for the garage. The certificate of occupancy was not issued until over a year after SCDG terminated the contract. The Town contends the contract required it to begin paying rent only when the certificate of occupancy issued, and its rent was then due to be paid annually as set forth in sections 1.09 and 1.10. The Town argues the trial court's ruling rewrote the rental payment sections and put in its place a clause providing the remedy of rent acceleration, a remedy the parties had rejected when negotiating the contract.

On the other hand, SCDG insists "due" means all future rent the Town was to pay for the entire first fifteen-year lease term. According to SCDG, this interpretation is the only sensible one, for the parties in another section of the contract agreed on what would happen if the Town made a rent payment in an amount less "than the then due rent." SCDG believes the use of the phrase "then due rent" in that section must mean that the phrase "rent due" in Section 6.01 includes future rent yet to accrue. SCDG also maintains it can recover future rent from the Town because section 8.17 notes that any obligation of a party to "pay any sum owing or to perform any act" survives termination of the contract.

When viewed in the setting the parties have framed it, the word "due," like Mona Lisa's smile, is inescapably ambiguous. *See In re Vause*, 886 F.2d 794, 799 (6th Cir. 1989) (finding the term "due" as used in lease provision "'any unpaid rent due under such lease'" to be "inherently ambiguous"). For many years, *Black's Law Dictionary* acknowledged the tricky meaning of "due":

> The word "due" always imports a fixed and settled obligation or liability, but with reference to the time for its payment there is considerable ambiguity in the use of the term, the precise signification being determined in each case from the context. It may mean that the debt or claim in question is now (presently or immediately) matured and enforceable, or that it matured at some time in the past and yet remains unsatisfied, or that it is fixed and certain but the day appointed for its payment has not yet arrived.

Due, *Black's Law Dictionary* (5th ed. 1979).

Why *Black's* dropped this illuminating perception from more recent editions is a mystery, but we doubt it was due to "due" attaining a sudden clarity of meaning. The pertinent definitions of "due" contained in the current edition of *Black's* are so circular as to be of no help in our inquiry here. Due, *Black's Law Dictionary* (12th ed. 2024) (" . . . 2. Immediately enforceable <payment is due on delivery>. 3. Owing or payable; constituting a debt <the tax refund is due from the IRS>.").

Context shades meaning, always. And the absence of context may mask meaning. The context missing from the contract phrase here is the dimension of time: the contract does not say what rent is "due" at the time of termination.

Another bit of context is important. For centuries the common law treated land leases differently than other contracts. In general, if a landlord terminated a lease and repossessed the premises, he could not sue for future rent due. *Gardiner v. William S. Butler & Co.*, 245 U.S. 603, 604 (1918); *U.S. Rubber Co. v. White Tire Co.*, 231 S.C. 84, 95, 97 S.E.2d 403, 409 (1956); *Simon v. Kirkpatrick*, 141 S.C. 251, 261, 139 S.E. 614, 618 (1927). Instead, the landlord's potential remedies were limited to (1) taking over possession of the premises and foregoing any future rent; (2) if the premises remained empty, he could sue each time the periodic rent was due; or (3) if the premises remained empty for the entire lease term, he could wait until the end of the term and sue for the balance due. In either event, the rule was that "[r]ent issues from the land, is not due until the rent day, and is due in respect of the enjoyment of the premises let." *Wm. Filene's Sons Co. v. Weed*, 245 U.S. 597, 601 (1918) (Holmes, J.); *see also Skalowski v. Joe Fisher, Inc.*, 152 S.C. 108, 122, 149 S.E. 340, 345–46 (1929). This was similar to the common law rule that a tenant could not anticipatorily breach a lease contract because the tenant's duty to pay rent was contingent on the landlord's continuing duty to furnish the rental property. *Skalowski*, 152 S.C. at 122, 149 S.E. at 345–46; *see also Gentry v. Recreation, Inc.*, 192 S.C. 429, 431–36, 7 S.E.2d 63, 63–66 (1940) (stating general common law rule

and holding that rent clause stating if lessee surrendered premises, then the "full rental price for the whole of the unexpired term shall become immediately due and payable" constituted unenforceable penalty). The law no longer treats land leases differently from other contracts. Parties to a lease may now agree that in the event of an anticipatory breach and termination, the lessee can still be on the hook for all future rent, subject to the lessor's duty to mitigate, as long as the agreement does not amount to a penalty. *See Bluffton Towne Center, LLC v. Gilleland-Prince*, 412 S.C. 554, 566–68, 772 S.E.2d 882, 889–90 (Ct. App. 2015); *D & D Leasing Co. of S.C. v. David Lipson*, *Ph.D., P.A.*, 305 S.C. 540, 543, 409 S.E.2d 794, 796 (Ct. App. 1991) (car lease). But the key is that the parties must agree, and given the ambiguity we have found in section 6.01, what SCDG and the Town agreed upon will have to be discovered from something more than the words used in the contract.

## II.

Because the contract term is ambiguous, we remand this case to the trial court for a new trial on damages to determine the parties' intent. The parties may introduce parol evidence relevant to their intent, including the rejected drafts of proposed contract terms and other negotiation background. *S.C. Dep't of Nat. Res. v. Town of McClellanville*, 345 S.C. 617, 623, 550 S.E.2d 299, 303 (2001). If, on remand, the trial court makes the factual finding that the parties intended that upon termination SCDG could recover as damages the rent due for the entire fifteen-year lease term, then the trial court shall further determine whether this constitutes an enforceable liquidated damages provision or an unenforceable penalty. (We reject SCDG's argument that the Town did not preserve the penalty issue. The trial court specifically ruled on the issue in its order denying reconsideration, and the court of appeals addressed it.)

We acknowledge the trial court appeared to construe the provision as a valid liquidated damages provision, but we vacate that ruling because it was not accompanied by analysis of the proper factors. These factors are whether (1) before entering the contract, the parties acknowledged that any injury caused by the breach would be difficult or impossible to calculate; and (2) the amount of damages stipulated is not plainly disproportionate to any probable damage caused by the breach. *See Tate v. Le Master*, 231 S.C. 429, 441, 99 S.E.2d 39, 45–46 (1957); *Foreign Acad. & Cultural Exch. Servs., Inc. v. Tripon*, 394 S.C. 197, 204, 715 S.E.2d 331, 334 (2011); *see also Mid-Continent Refrigerator Co. v. Way*, 263 S.C. 101, 106, 208 S.E.2d 31, 33 (1974) (holding provision in equipment lease purporting to allow lessor to repossess equipment upon default and also "sue for and recover all rents, then accrued and thereafter accruing" was unenforceable penalty); *Gentry*, 192 S.C. at 436, 7 S.E.2d at 65–66 (rent acceleration clause amounted to unenforceable

penalty); *Moser v. Gosnell*, 334 S.C. 425, 428–32, 513 S.E.2d 123, 124–27 (Ct. App. 1999) (holding contract clause stipulating that if seller of business violated covenant not to compete then buyer could recover entire $585,000 of the purchase price as damages constituted an unenforceable penalty, as amount stipulated was plainly disproportionate to any probable damage that would ensue from breach; at the time the parties entered the contract, "parties could not reasonably have believed" that any probable damage caused by breach would equal the full purchase price, and evidence showed actual damages caused by the breach "amounted to only a few thousand dollars").

In the event the trial court decides the parties intended to allow SCDG to recover as damages the rent due for the entire fifteen-year lease term and further finds this to be an enforceable liquidated damages provision, the trial court shall then determine to what extent SCDG's damages must be reduced by the rent reduction provision found in Section 1.07(b) of the contract. The trial court shall permit discovery of financial information that may bear on SCDG's profit and loss on the project, as well as the revenue, expenses, and annual net profit of the garage, including discovery from SCDG's successors in interest or other third parties.

If the trial court decides that the parties intended to allow SCDG to recover as damages the rent due for the entire fifteen-year lease term but rules this provision constitutes an unenforceable penalty, then SCDG's remedy reverts to a claim for general damages recoverable for breach of contract. *Tate*, 231 S.C. at 441–42, 99 S.E.2d at 46. The measure of general damages for breach of contract is the actual loss suffered by the nonbreaching party as a result of the breach. *McNaughton v. Charleston Charter Sch. for Math & Sci., Inc.*, 411 S.C. 249, 261, 768 S.E.2d 389, 396 (2015); *Bensch v. Davidson*, 354 S.C. 173, 177–78, 580 S.E.2d 128, 130 (2003); *S.C. Fin. Corp. of Anderson v. West Side Fin. Co.*, 236 S.C. 109, 122, 113 S.E.2d 329, 335–36 (1960); *S.C. Fed. Sav. Bank v. Thornton-Crosby Dev. Co.*, 303 S.C. 74, 77, 399 S.E.2d 8, 10 (Ct. App. 1990) ("In a breach of contract action, damages serve to place the nonbreaching party in the position he would have enjoyed had the contract been performed."). In such event, the trial court shall allow the parties to conduct discovery related to damages, mitigation of damages, and the revenue and expenses of the garage and other data relevant to the rent reduction formula set forth in section 1.07(b), including the full scope of financial discovery mentioned above.

Alternatively, the trial court may decide on remand that the parties' intent was to limit SCDG's recoverable damages to the rent that had accrued and was payable as of the date of termination.

We express no opinion on the merits of the issues to be decided on remand.

To sum up, we affirm the judgment that the Town breached the contract. We reverse the decision of the court of appeals, vacate the damages award, and remand to the trial court for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS.**

**KITTREDGE, C.J., FEW, JAMES, HILL and VERDIN, JJ., concur.**